(No. 50288.— )
JOSEPH KUJAWINSKI, Appellee, v. BETTY ANN KUJA-WINSKI *et al.* —(Edward O. Laumann, Appellant.)

*Opinion filed May 26, 1978.*

564

KLUCZYNSKI, J., took no part.

Albert E. Jenner, Jr., Marshall J. Auerbach, Robert E. Pfaff, James H. Feldman, and William D. Snapp, of Chicago (Jenner & Block, of counsel), for appellant.

Bernard Kaufman and Stuart N. Litwin, of Chicago (Kaufman & Litwin, of counsel), for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

This case is before us to determine the constitutionality of certain provisions of the Illinois Marriage and Dissolution of Marriage Act which became effective October 1, 1977 (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*).

The cause was originally filed in the circuit court of Cook County as a class action seeking a declaratory judgment. Plaintiff, Joseph Kujawinski, who was a party to a pending divorce action, brought this action individually and as a representative of that class of persons similarly situated who were parties to pending divorce litigation or who would become parties to divorce litigation and who had ownership, title and a vested right to property. Plaintiff alleged that he was the father of six children born of his marriage to defendant Betty Ann Kujawinski. Edward O. Laumann, also a party to a pending divorce action, was permitted to intervene as a defendant. The matter was submitted to the trial court as a question of law on the pleadings. Prior to a hearing on the merits,

plaintiff's motion to dismiss the class was granted, and the matter proceeded only on plaintiff's individual claims. The intervenor remained in the action.

The trial court entered an order declaring unconstitutional sections 503(b), 503(d), 510(c), 513, 801(b), 801(c), and 801(d) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, pars. 503(b), 503(d), 510(c), 513, 801(b), 801(c), 801(d)). The provisions relate primarily to the following three areas: (1) the retrospective application of the new act to property acquired prior to the effective date of the Act; (2) the allocation of funds for the education of children beyond the minority age of the children; and (3) the provision for child support beyond the death of the parent obligated to support. Because the trial court declared the above-cited provisions invalid, Laumann, defendant-intervenor (defendant), appealed directly to this court pursuant to Supreme Court Rule 302(a) (58 Ill. 2d R. 302(a)).

We will first address those matters raised *sua sponte* by the trial court, as opposed to those raised by the parties. We note that the plaintiff has failed to pursue the former matters in this court.

The record indicates that the trial court, *sua sponte*, declared unconstitutional sections 801(c) and 801(d) of the Act, but that court's order did not incorporate any conclusions of law which might indicate the basis for such holding. Section 801(c) concerns modification proceedings, and section 801(d) governs appeals which were pending prior to October 1, 1977. (See *Sommer v. Borovic* (1977), 69 Ill. 2d 220, 238.) Neither section is applicable to the plaintiff, who alleges only that he was a party to a divorce action pending in the circuit court of Cook County. This court has often propounded that "[i]t is axiomatic that one may not complain of a statutory provision which does not affect him" (*Spalding v. City of Granite City* (1953), 415 Ill. 274, 283), and that a court

may not "determine the constitutionality of the provisions of an act which do not affect the parties to the cause under consideration." (*Rosewood Corp. v. Fisher* (1970), 46 Ill. 2d 249, 259, *cert. denied* (1971), 401 U.S. 928, 28 L. Ed. 2d 209, 91 S. Ct. 924.) Accordingly, the trial court erred in declaring unconstitutional sections 801(c) and 801(d).

Also, there is some question as to whether the trial court's order, which declared unconstitutional section 513, should be read to apply to the entire provision. A part of the section relates only to support for mentally or physically disabled children. Although plaintiff alleged that he was the father of six children, the pleadings did not state that any of the children were mentally or physically disabled. To the extent that the trial court order embraced that part of section 513, it erred in determining the constitutionality of a statutory proviso that did not affect the parties involved.

Further, the record reveals that plaintiff challenged the constitutionality of section 801(b) only as it applies to property acquired prior to the effective date of the Act. The section provides that the Act "applies to all pending actions and proceedings commenced prior to its effective date with respect to issues on which a judgment has not been entered. ***" (Ill. Rev. Stat. 1977, ch. 40, par. 801(b).) Nevertheless, the trial court declared the section unconstitutional and indicated during the trial proceedings that the section usurps the judicial function in violation of the separation of powers doctrine embodied in article II, section 1, of the Illinois Constitution. The transcript reflects that the trial court was concerned that this section prevents the court from determining facts in cases pending before it. We find this concern unwarranted. The section does not dictate the resolution of facts in pending actions; it merely mandates which law the court is to apply to the facts in pending cases. As this court has stated in the past:

"The entry of an order in a cause pending in court is a judicial function, which is not to be exercised at the direction of the legislature but in the judgment of the court. The legislature has power to change the law, and the court, in the decision of pending cases, will dispose of them under the law in force at the time its judgment is rendered." (*People ex rel. Coen v. Henry* (1921), 301 Ill. 51, 53.)

Therefore, section 801(b) does not invade the province of the judiciary in violation of the separation of powers.

Plaintiff's objection to section 801(b) is that it retrospectively applies the "marital property" provisions of section 503(b) to his case, and thereby precipitates an unconstitutional impairment of the obligation of contracts and an unconstitutional deprivation of property without due process of law. The latter section provides, in pertinent part:

> "All property acquired by either spouse after the marriage and before a judgment of dissolution of marriage *** is presumed to be *marital property,* regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, or community property. The presumption of *marital property* is overcome by a showing that the property was acquired by a method listed in subsection (a) of this Section." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 40, par. 503(b).)

Plaintiff asserts that the effect of this provision, when applied restrospectively to property acquired prior to the effective date of the Act, is to convey to a spouse who had no interest in certain property prior to October 1, 1977, a partnership interest in that property. Plaintiff argues that the conveyance becomes operative during the marriage and is effective regardless of whether the marriage is ever dissolved. It is primarily upon this construction of the Act that plaintiff predicates his conclusion that retrospective

application of such divestment of his property violates the contract and due process clauses of the Federal and State constitutions.

Plaintiff's construction completely distorts the nature and function of the provision. Section 503(b), as plaintiff concedes, must be read in consort with the provisions that immediately precede and succeed it. Section 503(a) is definitional and explains:

> "For purposes of this Act, 'marital property' means all property acquired by either spouse subsequent to the marriage, except the following, which is known as 'non-marital property': ***." (Ill. Rev. Stat. 1977, ch. 40, par. 503(a).)

The provision then lists six such exceptions, including property acquired by gift or devise and property acquired in exchange for property acquired before the marriage.

Section 503(c) gives the two previous sections operative effect. It states:

> "In a proceeding for dissolution of marriage *** the court shall assign each spouse's non-marital property to that spouse. It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors ***." Ill. Rev. Stat. 1977, ch. 40, par. 503(c).

The three provisions are based on former section 307 of the Uniform Marriage and Divorce Act. The explanatory note accompanying that section clearly establishes its limited function. It resolves that "marital property" is defined "only for the purposes of divison on dissolution of marriage or legal separation. No attempt is made to regulate the respective interests of the spouses in property during the existence of the marriage." (Uniform Marriage and Divorce Act (U.L.A.) sec. 307, Commissioners' Note, at 492 (1973).) This function comports with the legislative purposes enunciated in section 102 of the Illinois act. These legislative purposes include mitigating the potential harm caused by the process of legal dissolution, making

reasonable provision during and after litigation, and eliminating the consideration of marital misconduct in the adjudication of rights and duties incident to the legal dissolution of marriage, legal separation and declaration of invalidity of marriage. (Ill. Rev. Stat. 1977, ch. 40, pars. 102(4), (5), (6).) The Act does not purport to affect property interests during the marriage. The term "marital property" is a nomenclature devised to realize an equitable distribution of property upon termination of the marriage. Operation of the term "marital property" under the Act is not triggered until the time of dissolution. Section 503(b) does not prevent married persons from owning property separately during the marriage and disposing of it in any fashion that the property-owning spouse may choose. Accord, *Fournier v. Fournier* (Me. 1977), 376 A.2d 100, 102; *Painter v. Painter* (1974), 65 N.J. 196, 216 n.5, 320 A.2d 484, 494 n.5.

This statutory construction, plaintiff persists, does not mitigate the constitutional infirmity of the provision. His position remains that the transfer of an interest in his property to a spouse who had no interest in that property, even if only upon termination of marriage, impairs his contractual relations with third persons and divests him of vested property rights. With regard to the contract clauses of the Federal and State constitutions (U.S. Const., art. I, sec. 10; Ill. Const. (1970), art. I, sec. 16), plaintiff's constitutional objection is difficult to discern. Plaintiff agrees that it is not the marriage contract between the spouses which is being impaired, for marriage contracts are not deemed to be protected by the constitutional contract clauses. (*Maynard v. Hill* (1888), 125 U.S. 190, 210, 31 L. Ed. 654, 658, 8 S. Ct. 723, 729; *Home Building & Loan Association v. Blaisdell* (1933), 290 U.S. 398, 429 n.8, 78 L. Ed. 413, 424 n.8, 54 S. Ct. 231, 236 n.8; *Rothman v. Rothman* (1974), 65 N.J. 219, 225 n.4, 320 A.2d 496, 499 n.4.) Plaintiff, however, hypothesizes that his interest

in property jointly held by him and a third party may be awarded and transferred to his spouse, pursuant to section 503(b), thus impairing the preexisting contractual relationship. Again, plaintiff misconstrues the effect of the section. It merely classifies the aggregate property interests of the spouses for the purposes of equitably distributing the property. That which is classified as "marital property" is subject to distribution *within those limitations set by laws governing transfers, assignments and conveyances of such property.* For instance, if a spouse is awarded plaintiff's property which is subject to an outstanding contractual obligation to a third party, the third party is not prevented from enforcing his claim against the plaintiff. Or if a partnership exists between plaintiff and a third party, the court might not compel conveyance to the spouse of property owned by the partnership because of the prohibition against assignments in the Uniform Partnership Act (Ill. Rev. Stat. 1977, ch. 106½, par. 25(2)(b)). Section 503(b) does not require that each "marital property" interest be divided between the spouses or transferred in whole or in part to the nonowning spouse. We must presume that the "marital property" will be distributed pursuant to section 503(b) so as to avoid the impairment of any contractual obligations owed to third parties who are not parties to the dissolution proceeding. We discern no other cognizable objection by plaintiff relative to the constitutional impairment of the obligation of contracts.

Plaintiff also argues that the section unconstitutionally deprives him of a vested interest in the property which he had acquired and owned prior to the effective date of the Act. He characterizes a vested interest in property as one which cannot be retrospectively abrogated by the legislature except when reasonably justified in the exercise of the State's police power. Therefore, here, we must balance the property interest to be impaired against

the State interest to be promoted in applying section 503(b) retrospectively to such property.

As earlier noted, section 503 does not directly divest or transfer property. It does not affect plaintiff's property in any way during the marriage. It merely classifies as "marital property" that which becomes subject to distribution upon termination of the marriage. This is a critical qualification because, even under the preexisting law, as regards his spouse, plaintiff did not have an absolute right to his property upon termination of his marriage. Under former law, the property interest could be impaired in that, whenever a divorce was granted, the court could compel the conveyance of property owned by one spouse to the other spouse upon a showing that the latter spouse contributed financially to the acquisition or improvement of the property. (Ill. Rev. Stat. 1975, ch. 40, par. 18.) A court could also order the conveyance of real or personal property to the nonowning spouse for the purpose of support in limited situations. (Ill. Rev. Stat. 1975, ch. 40, par. 19.) These provisions for "special equities" and "alimony in gross," respectively, permitted the court to invade the property of the title-owning spouse for the purpose of transferring it to the other spouse upon termination of the marriage. Consequently, the retrospective application of section 503(b) to property which was already subject to divestment in a divorce proceeding cannot be said to have impaired an absolute property interest. It merely enhanced a remedy already available to the non-property-owning spouse. Plaintiff had no reasonable expectation, under the preexisting law, that his property was immune from transfer to his spouse upon termination of the marriage.

Against this limited property interest, we must appraise and compare the State interest to be promoted by applying section 503 retrospectively. "It is, of course, not for us to say whether the particular law before us is

desirable from the standpoint of legislative policy, since the wisdom of legislation is a matter committed exclusively to a co-ordinate branch of our government, the General Assembly. It is sufficient to show that it is not unreasonable in the light of legislative objectives and was within the province of legislative power." (*People ex rel. Doty v. Connell* (1956), 9 Ill. 2d 390, 396.) The primary legislative objective is to create a system of property division upon dissolution of marriage that is more equitable than that which previously existed in this State. It is evident that the legislature recognized glaring inequitites in the earlier law and favored change. For instance, by giving both spouses an interest in "marital property" upon dissolution of marriage, the legislature sought to award economic credit in the distribution of property for indirect or domestic contributions to the accumulation of property and sought to replace the concept of post-marital support through alimony with one of post-marital stability through a just distribution of marital property and assets. Plaintiff acknowledges the legitimacy of such objectives, but contends that the objectives could have been attained by limiting the effect to property acquired after the effective date of the Act.

Had the legislature chosen to apply the concept of equitable distribution of property only to property acquired after the Act became effective, the full impact and purposes of the new act would not have been felt for at least a generation. (See *Rothman v. Rothman* (1974), 65 N.J. 219, 222-23, 320 A.2d 496, 498.) Such prospective application would continue the very inequity which the legislature sought to remedy and would place the present generation of married couples at a decided disadvantage in comparison with subsequent generations of married couples. Moreover, in each dissolution proceeding involving property, courts would be presented with the impracticable dilemma of applying, depending upon the acquisi-

tion date of any disputed property, differing sets of laws and policies.

On balance, we conclude that the State interest to be promoted by applying the section retrospectively greatly outweighs the asserted property interest, which is only slightly more impaired by such application. (Accord, *Rothman v. Rothman* (1974), 65 N.J. 219, 232, 320 A.2d 496, 503; *Corder v. Corder* (Mo. App. 1977), 546 S.W.2d 798, 804-05.) Therefore, section 503(b), applied retrospectively to property acquired prior to the effective date of the Act, does not deprive plaintiff of property in violation of the due process clauses of the Federal and State constitutions.

Finally, plaintiff contends that three provisions of the Act deny him equal protection of the law in that they invidiously discriminate against divorced parents. Section 503(d) provides:

> "The court may protect and promote the best interests of the children by setting aside a portion of the jointly or separately held estates of the parties in a separate fund or trust for the support, maintenance, education, and general welfare of any minor, dependent, or incompetent child of the parties." (Ill. Rev. Stat. 1977, ch. 40, par. 503(d)).

Section 510(c) establishes, in pertinent part:

> "Unless otherwise agreed in writing or expressly provided in the judgment, provisions for the support of a child are terminated by emancipation of the child, except as otherwise provided herein, but *not by the death of a parent obligated to* support the child ***." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 40, par. 510(c).)

The relevant portion of section 513 states:

> "The Court also may make such provisions for the education and maintenance of the child or children, *whether of minor or majority age,* out of the property of either or both of its parents as equity may require, whether application is made therefor before or after such

child has, or children have, attained majority age. In making such awards, the court shall consider all relevant factors which shall appear reasonable and necessary, including:

(a) The financial resources of both parents.

(b) The standard of living the child would have enjoyed had the marriage not been dissolved.

(c) The financial resources of the child." (Emphasis added.) Ill. Rev. Stat. 1977, ch. 40, par. 513.

Each of the provisions must be considered according to the well-established standards regarding equal protection of the laws under both the Federal and State constitutions. The legislature may differentiate between persons similarly situated as long as the classification bears a reasonable relationship to a legitimate legislative purpose. (*McGowan v. Maryland* (1961), 366 U.S. 420, 425-26, 6 L. Ed. 2d 393, 399, 81 S. Ct. 1101, 1105; *S. Bloom, Inc. v. Mahin* (1975), 61 Ill. 2d 70, 76.) Any statute reviewed under this standard is presumed to be constitutional despite the fact that, in practice, it may result in some inequality. (*McGowan v. Maryland* (1961), 366 U.S. 420, 425-26, 6 L. Ed. 2d 393, 399, 81 S. Ct. 1101, 1105.) The burden rests upon the person challenging the statute to negate the existence of any facts which may reasonably be conceived to sustain it. *Schilb v. Kuebel* (1970), 46 Ill. 2d 538, 549-50, *aff'd* (1971), 404 U.S. 357, 364, 30 L. Ed. 2d 502, 511, 92 S. Ct. 479, 484.

According to plaintiff, sections 503(d) and 513 permit a dissolution order to require divorced parents to allocate funds for the education of their children beyond the children's minority, and he points out that such burden is not imposed upon nondivorced parents. Defendant's first line of response is that nondivorced parents do have a coextensive legal obligation to provide for the education of their children beyond the minority of the children. He refers to the following statutory obligation which applies to nondivorced parents:

"The expenses of the family and of the education of the children shall be chargeable upon the property of both husband and wife, or of either of them, in favor of creditors therefor, and in relation thereto they may be sued jointly or separately." (Ill. Rev. Stat. 1977, ch. 40, par. 1015.)

This court has not had occasion to consider whether the above-cited provision obligates nondivorced parents to fund the education of their majority aged children, and we have no occasion to do so here. Rather, we find that the imposition of such an obligation upon divorced parents is reasonably related to a legitimate legislative purpose.

It cannot be overemphasized that a divorce, by its nature, has a major economic and personal impact on the lives of those involved. That the legislature is cognizant of this is evident by the fact that an express purpose of the Act is to "mitigate the potential harm to the spouses and their children caused by the process of legal dissolution of marriage." (Ill. Rev. Stat. 1977, ch. 40, par. 102(4).) Commonly, a divorce means that the spouses will go their separate ways, live independent lives, and accrue additional expenses which they would not have had had the family remained united. Unfortunately, it is not the isolated exception that noncustodial divorced parents, because of such additional expenses or because of a loss of concern for children who are no longer in their immediate care and custody, or out of animosity directed at the custodial spouse, cannot be relied upon to voluntarily support the children of the earlier marriage to the extent they would have had they not divorced. One appellate court stated in ordering a divorced parent to contribute to the college education of his noncustodial child:

"In a normal household, parents *** direct their children as to when and how they should work or study. That is on the assumption of a normal family relationship, where parental love and moral obligation dictate what is best for the

children. Under such circumstances, natural pride in the attainments of a child \*\*\* would demand of parents provision for a college education, even at a sacrifice.

When we turn to divorced parents—a disrupted family—society cannot count on normal protection for the child, and it is here that equity takes control to mitigate the hardship that may befall children of divorced parents." *Maitzen v. Maitzen* (1959), 24 Ill. App. 2d 32, 38.

We might point out to plaintiff that sections 503(d) and 513 do not mandate that divorced parents must provide their children of majority age with funds for education in all cases. It is certainly a legitimate legislative purpose to minimize any economic and educational disadvantages to children of divorced parents. If parents could have been expected to provide an education for their child of majority age absent divorce, it is not unreasonable for the legislature to furnish a means for providing that they do so after they have been divorced. We have no hesitation, therefore, in concluding that it is reasonably related to that legitimate purpose for the legislature to permit the trial court, in its sound discretion, to compel divorced parents to educate their children to the same extent as might reasonably be expected of nondivorced parents. (Accord, *Childers v. Childers* (1978), 89 Wash. 2d 592, 601-05, 575 P.2d 201, 207-09.) Sections 503(d) and 513 do not violate the equal protection guarantees of the Federal and State constitutions.

As to section 510(c), plaintiff correctly represents that the obligation of a nondivorced parent to support a dependent child terminates upon that parent's death, *i.e.,* a nondivorced parent is free to disinherit a dependent child. Plaintiff urges that there is no rational basis for allowing nondivorced parents such freedom of testation while burdening the estates of divorced parents with child

support obligations.

Two reasonable justifications are given by defendant for singling out divorced parents. First, though a nondivorced parent may disinherit a dependent child, he may not disinherit his family. The surviving parent may renounce the will of the deceased parent and demand a statutory forced share of the deceased parent's estate. (Ill. Rev. Stat. 1977, ch. 110½, par. 2–8.) The forced share then becomes available for the support of the dependent child because the surviving parent remains obligated to support the child. In effect, a child of a nondivorced parent has some indirect security against the possible loss of support due to disinheritance. The dependent child of a divorced parent has no similar protection because a surviving divorced spouse is not entitled to a forced share of a former spouse's estate. It is against the background of this inequity that section 510(c) was conceived. It seeks to protect the dependent child of divorced parents from loss of support through disinheritance, a loss from which a child of nondivorced parents is indirectly insulated. A divorced parent is still free to disinherit a child of his divorced marriage, subject only to the limited obligation of support. In balance, section 510(c) mitigates rather than aggravates inequality.

Second, while it is comparatively rare for a nondivorced parent to leave a spouse and their children out of a will, it is not so uncommon for a divorced parent to do so. (See *Hornung v. Estate of Lagerquist* (1970), 155 Mont. 412, 419, 473 P.2d 541, 545.) A divorced parent may establish a new family which may command primary allegiance in a subsequent will. The well-being of children of a former marriage may seem more remote to a noncustodial parent than the well-being of those children over whom that same parent has immediate care and custody. In addition, the divorced parent may harbor animosity toward a former spouse, which disposition

might obscure the natural tendency to provide in a will for their mutual children. These are reasonable assumptions for the legislature to have made and assumptions which courts in other jurisdictions have countenanced. (See *Grotsky v. Grotsky* (1971), 58 N.J. 354, 358-60, 277 A.2d 535, 538-39; *Bailey v. Bailey* (1970), 86 Nev. 483, 488-89, 471 P.2d 220, 223; *Franklin Life Insurance Co. v. Kitchens* (1967), 249 Cal. App. 2d 623, 630-31, 57 Cal. Rptr. 652, 657; *Morris v. Henry* (1952), 193 Va. 631, 636-39, 70 S.E.2d 417, 420-21; *In re Moore's Estate* (1949), 34 Tenn. App. 131, 146-47, 234 S.W.2d 847, 854; *Miller v. Miller* (1874), 64 Me. 484, 487.) Plaintiff, in whom the burden resides to negate the plausibility of such assumptions, has not done so.

Moreover, the legislature need not protect all children equally from the possible loss of support due to disinheritance. It may provide a remedy or institute a reform in progressive stages, addressing itself to the phase of a problem which seems most acute at the time. (*Williamson v. Lee Optical of Oklahoma, Inc.* (1955), 348 U.S. 483, 489, 99 L. Ed. 563, 573, 75 S. Ct. 461, 465; *Illinois Coal Operators Association v. Pollution Control Board* (1974), 59 Ill. 2d 305, 312-13.) We, therefore, hold that plaintiff has not satisfied the burden of showing that section 510(c) invidiously discriminates against divorced parents in defiance of equal protection.

For the reasons stated, we reverse the judgment of the trial court which declared unconstitutional sections 503(b), 503(d), 510(c), 513, 801(b), 801(c) and 801(d) of the Illinois Marriage and Dissolution of Marriage Act.

*Judgment reversed.*

MR. JUSTICE KLUCZYNSKI took no part in the consideration or decision of this case.