In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 17-1766

IN RE:

    TIMOTHY H. THORPE,

*Debtor.*

JEANA K. REINBOLD, as Chapter 7 Trustee
of the Estate of Timothy H. Thorpe,

*Plaintiff-Appellant,*

*v.*

BELVA J. THORPE,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court
for the Central District of Illinois.
No. 4:16-cv-04041-SLD — **Sara Darrow**, *Judge.*

———————————

ARGUED SEPTEMBER 18, 2017 — DECIDED JANUARY 31, 2018

———————————

Before BAUER, FLAUM, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Timothy and Belva Thorpe married
in 1986 and bought a house together in Illinois in 1987. They
lived in that home until shortly after Belva filed for divorce

in October 2012. Timothy then filed for bankruptcy protection in June 2013. Finally, a month later, an Illinois divorce court awarded Belva the marital home. Belva and the trustee of Timothy's bankruptcy estate now find themselves in a years-long dispute about whether the divorce court's award should stand.

Rounds of litigation below have narrowed this appeal. It is undisputed that at the moment Belva filed for divorce, § 503(e) of the Illinois Marriage and Dissolution of Marriage Act, 750 ILL. COMP. STAT. 5/501–5/516, granted Timothy and Belva contingent rights in the entire house. The parties further agree that the estate acquired Timothy's half-interest in the marital home at the moment he declared bankruptcy. The sole dispute here is whether the estate took Timothy's half-interest *subject to* Belva's contingent interest. If it did, the divorce court's award divested the estate of any right to the house. If it did not, the divorce court had no authority to strip the estate of Timothy's half-interest.

The trustee asks us to adopt the latter position. Her argument relies on the second sentence of § 503(e), which provides that contingent interests in marital property "shall not encumber that property so as to restrict its transfer, assignment or conveyance." *Id.* § 5/503(e). She claims that Belva's contingent interest must have disappeared when Timothy declared bankruptcy because otherwise the contingency would impermissibly restrict the transfer of the half-interest to the estate.

This argument has yet to find any takers. The bankruptcy judge did not address it because he found that § 503(e) did not apply to jointly held property. The district judge disagreed and found that § 503(e) did apply, but she concluded

that Timothy's estate took his half-interest subject to Belva's contingency without discussing the statutory text at any length.

We affirm the district court, albeit with more meat on the bones. The plain statutory text demonstrates that the bankruptcy estate took Timothy's half-interest in the marital home subject to Belva's contingent interest. Nothing in the Illinois Dissolution of Marriage Act or federal law suggests a contrary holding. Accordingly, the divorce court divested the estate of all rights to the marital home when it awarded the house to Belva.

## I. Background

Timothy and Belva Thorpe married on December 6, 1986. They purchased a house the following July by warranty deed, which identified them as joint tenants. This meant Timothy and Belva each owned a half-interest in the shared home that either of them could convey without the consent of the other. *See Snyder v. Heidelberger*, 953 N.E.2d 415, 420 (Ill. 2011).

On October 6, 2012, Belva filed for divorce. This was followed by Timothy's petition for bankruptcy protection under Chapter 7 on June 21, 2013. The filing of the bankruptcy petition caused an automatic stay to issue on the divorce proceedings then pending against Timothy. *See* 11 U.S.C. § 362(a)(1). The Illinois divorce court continued to adjudicate issues as they arose in the Thorpe divorce, but it could not enter judgment while the stay was in effect.

On July 31, 2013, the divorce court issued a written order finding that Belva had established grounds for divorce. The court then awarded the marital home to Belva free and clear

of Timothy's claims because he had dissipated $98,000 in marital assets. Final judgment was entered on June 2, 2015, after the bankruptcy court modified the automatic stay to permit the divorce court to enter judgment on the 2013 order.

This litigation commenced on November 10, 2014, when the trustee of Timothy's bankruptcy estate filed an adversary proceeding against Belva in the bankruptcy court. The trustee sought to undo the divorce court's award and exercise her right to sell Timothy's half-interest to settle the estate's debts. *See* 11 U.S.C. § 363(h). The parties each moved for summary judgment after the final entry of the divorce court's order in 2015.

The bankruptcy court entered judgment for Belva. According to the court, § 503(e)'s legislative purpose "was to enable divorce related property transfers of *separately* owned property to be treated as nontaxable events by the IRS." *In re Thorpe*, 546 B.R. 172, 181 (Bankr. C.D. Ill. 2016) (emphasis added). The bankruptcy judge reasoned that because the asset at issue was a jointly held home, § 503(e) did not apply. The judge then found for Belva on other grounds not relevant here.

The district judge disagreed but affirmed nonetheless. She noted that a joint tenant could convey his interest to a third party and thereby trigger a taxable event. Section 503(e)'s purpose was thus implicated by the transfer of a half-interest in a joint tenancy. The judge then concluded without discussion that the transfer of Timothy's half-interest to the bankruptcy estate was encumbered by Belva's contingent interest. This ultimately meant that the divorce

court's award divested the estate of any claim it had to the marital home.

The trustee disagrees and brought this appeal. She contends that the estate took Timothy's half-interest in the marital home free and clear of Belva's contingent interest.

## II. Discussion

The trustee argues that the bankruptcy and district judges incorrectly interpreted § 503(e) of the Illinois Dissolution of Marriage Act. This is a question of law that we review de novo. *See In re Kempff*, 847 F.3d 444, 448 (7th Cir. 2017). Our analysis rests on the plain statutory text. *See In re Bronk*, 775 F.3d 871, 876 (7th Cir. 2015) ("Venturing into legislative history [is] unnecessary" when statutory text is clear.).

At bottom this case asks us to determine what Timothy's bankruptcy estate currently owns. Federal law provides that a bankruptcy estate "is comprised of … all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case." 11 U.S.C. § 541(a)(1). This means that "a bankruptcy trustee succeeds only to the title and rights in property that the debtor had at the time she filed the bankruptcy petition." *In re Sanders*, 969 F.2d 591, 593 (7th Cir. 1992). These property rights "are created and defined by state law," not federal law. *Butner v. United States*, 440 U.S. 48, 55 (1979).

The parties rightly point us to the Dissolution of Marriage Act as the relevant state law. Two sections control this appeal. Section 503(a) describes marital property as "all property … acquired by either spouse subsequent to the marriage." 750 ILL. COMP. STAT. 5/503(a). Section 503(e) then explains that "[e]ach spouse has a species of common own-

ership in the marital property which vests at the time dissolution proceedings are commenced." *Id.* § 5/503(e).

These provisions quickly resolve at least the threshold question that puzzled the lower courts. The Thorpe home is clearly marital property; it was acquired after Timothy and Belva were married. Moreover, § 503(e) applies to marital property by its plain terms. The Thorpe home thus falls within § 503(e)'s reach.

What "species of common ownership" means is a more esoteric question. Unlike community-property states, Illinois law does not establish independent ownership interests in marital property at the moment it is acquired. Nor does Illinois wait to establish such interests until the divorce court issues a final order. Instead, Illinois occupies a middle ground. Divorcing spouses are vested with independent contingent interests in all marital property at the moment a divorce petition is filed. When the divorce court eventually divides marital property, the obtaining spouse's contingent interest in that property ripens into a full ownership interest. Conversely, the spouse who is not awarded the property sees his contingent interest vanish.

These basic principles of law apply neatly here. When Belva filed for divorce, she and Timothy were each vested with contingent interests in the entire marital home. Timothy thus no longer owned a simple half-interest in the house. Instead, after the divorce proceeding was initiated, he owned a half-interest *subject to* Belva's contingent interest. This qualified half-interest is what the estate acquired when Timothy filed for bankruptcy less than a year later. Finally, once the divorce court awarded Belva the entire marital

home, the estate's contingent interest in the house disappeared. That leaves the estate without a claim.

The trustee urges us not to adopt this reasoning or result. She maintains that § 503(e) has more to say on the subject. In the second sentence, § 503(e) provides: "Any [contingent] interest in marital property shall not encumber that property so as to restrict its transfer, assignment or conveyance." The trustee argues that Belva's contingent interest is an impermissible encumbrance because it reduces the market value of the half-interest, thereby making it more difficult to sell. Accordingly, once Timothy's half-interest was transferred to the estate, it was freed from the shackles of Belva's contingent interest.

We cannot accept this construction. It requires us to disregard plain statutory text. Under Illinois law an encumbrance is any interest that "may subsist in a third party to the diminution of the value of the estate." *Brown v. Lober*, 389 N.E.2d 1188, 1191 (Ill. 1979). Belva's interest certainly encumbers Timothy's half-interest under this definition. But § 503(e) does not disallow encumbrances per se. It provides that contingent interests "shall not encumber [marital] property *so as to restrict its transfer*." § 5/503(e) (emphasis added). In light of this, something more than reducing the value of the half-interest is required. The contingent interest must itself legally restrict the grantor's ability to convey the underlying property. No such restriction is alleged here. Timothy was always free to transfer his qualified half-interest, and he in fact did so when he declared bankruptcy.

The trustee's argument also produces an absurd result. All contingent interests, by their nature, diminish the value of the underlying property rights to which they attach. They

are all encumbrances. So under the trustee's reading, § 503(e)'s second sentence evaporates the contingent interest produced by its first sentence. Any spouse could sell his property and dissipate the funds, leaving the other spouse high and dry. We simply do not read statutes to simultaneously grant rights and take them away. "It is an elementary rule of construction that [an] act cannot be held to destroy itself." *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 20 (1995) (internal quotation marks omitted).

The trustee next argues that our reading renders other statutory text superfluous. She first points to the final clause of § 503(e), which empowers a divorce court to "specifically enjoin[]" divorcing spouses from transferring their qualified property interests. She also directs our attention to § 503(d), which allows the divorce court to divide marital assets in light of "the dissipation by each party of the marital property." 750 ILL. COMP. STAT. 5/503(d)(2). The trustee claims that there is no reason to authorize the divorce court on either of these grounds if contingent interests survive transfers to third parties. An injunction would be unnecessary because the court could divide the marital property irrespective of where it ultimately ended up. And dissipation would be similarly futile because the divorce court could always claw back the dissipated asset.

The trustee is incorrect on both counts. The dissipation and injunction remedies provide relief that the contingent interest cannot. Suppose, for example, that Timothy were to sell his half-interest to a bona fide purchaser and then squander his earnings from the sale. Illinois law is clear that there would be no remedy against the third-party buyer. Our bona fide purchaser takes title "free of any interests of

third persons," assuming that he had no notice of Timothy's shenanigans. *Daniels v. Anderson*, 642 N.E.2d 128, 133 (Ill. 1994). This would leave Belva out of luck. There is no way to retrieve the property from wherever it might end up.

This is where the Act's additional statutory remedies come in. If other marital assets were still around, the divorce court could order an equitable division to make up for Timothy's dissipation. If no other marital assets existed, an injunction could hold Timothy personally liable. Belva could then attach Timothy's nonmarital assets to make up for the deficiency in the marital estate. Perhaps this is not worth much if Timothy is bankrupt, but it certainly makes Belva better off than having no recourse at all.

Having nothing more to say about the statute itself, the trustee turns to caselaw. She claims that our reading of § 503(e) runs afoul of *Kujawinski v. Kujawinski*, 376 N.E.2d 1382 (Ill. 1978). In that case, the plaintiff argued that § 503(b) of the Dissolution of Marriage Act violated the contract clauses of the U.S. and Illinois Constitutions. His specific concern was that a spouse and a third party might jointly hold property that a court could later distribute to the other spouse upon divorce. The Illinois Supreme Court found this worry to be misplaced. The court noted that § 503(b) did not divide property at all but instead helped answer the prior question about which property was subject to division. It thus could not impair a contract on its own. The court then concluded, as an aside, that it did not see an inevitable constitutional conflict because divorce courts would pre-sumably divide marital property "so as to avoid the im-pairment of any contractual obligations owed to third par-ties." *Id.* at 1387.

The trustee now seeks to transform this single line of dictum into a broad proposition that divorce awards should not interfere with the interests of bankruptcy estates. That takes *Kujawinski* far beyond its scope. If anything, the opinion cuts the other way. The court specifically noted that a hypothetical third party did not need to rely on a divorce court to protect his contractual rights. Instead, he could bring a suit for damages against the nonobtaining spouse or seek to void the divorce award pursuant to "those limitations set by laws governing transfers, assignments and conveyances of such property." *Id.* The onus thus lies on third parties to assert their legal rights when challenging a divorce court's division of marital property.

A bankruptcy trustee has a robust tool in this regard—its "strong-arm" power under 11 U.S.C. § 544. This allows the estate to take the debtor's property free from any encumbrance if it establishes that a hypothetical buyer without actual notice would have been a bona fide purchaser under state law. *See Belisle v. Plunkett*, 877 F.2d 512, 516 (7th Cir. 1989). The trustee in this case is obviously aware of this federal provision; she argued about it extensively before both the bankruptcy and district courts. In this appeal, however, she has explicitly waived any argument as to her strong-arm power. This is a tactical decision that we will not question or accommodate.

Finally, the trustee warns that our reading of § 503(e) subverts the priorities and policies underlying the bankruptcy code. The precise contours of her challenge are unclear, but the central worry seems to be that bankruptcy trustees will no longer be free to challenge divorce awards. This concern is overblown. As the trustee herself notes, fraudu-

lent transfer laws remain a viable tool to protect the estate's assets. Moreover, a trustee is always free to demonstrate why she should be able to exercise her strong-arm power under § 544. These legal remedies, and others, adequately protect federal interests.

Ultimately it is the trustee's reading of § 503(e) that upsets the priorities and policies underlying the bankruptcy code. We have repeatedly held that bankruptcy protection "is not intended to expand the debtor's rights against others more than they exist at the commencement of the [bankruptcy] case." *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984) (quotation marks omitted). We have also explained that "[t]he estate's property does not include the thing to which it lays claim until the matter is adjudicated or resolved by the parties." *In re Carousel Int'l Corp.*, 89 F.3d 359, 362 (7th Cir. 1996). The trustee's proposed reading of § 503(e) commits both of these sins. It expands the estate's rights and frustrates state-court adjudication simply because a bankruptcy has been filed. This creates "a windfall merely by reason of the happenstance of bankruptcy." *Lewis v. Mfrs. Nat'l Bank of Detroit*, 364 U.S. 603, 609 (1961). The Supreme Court has firmly rejected such outcomes. We do the same here.

AFFIRMED.