2019 IL App (2d) 190200-U
No. 2-19-0200
Order filed December 11, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF KANDRA HARTMAN, | ) ) ) | Appeal from the Circuit Court of Carroll County. |
| Petitioner-Appellee, | ) ) | |
| and | ) | No. 14-D-27 |
| | ) | |
| TIMOTHY HARTMAN, | ) ) | Honorable Val Gunnarsson, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Presiding Justice Birkett and Justice Burke concurred in the judgment.

**ORDER**

¶ 1     *Held*:   Respondent showed *prima facie* error in the trial court's award of child support, but not in its award of educational expenses or its refusal to declare section 513 of the IMDMA unconstitutional.

¶ 2     In this postdissolution action, respondent, Timothy Hartman, appeals from an order of the circuit court of Carroll County ordering him to pay (1) $37.40 in daily child support to petitioner, Kandra Hartman, on behalf of their child, Kaleb, from September 19, 2017, through Kaleb's May 2018 high school graduation, and (2) $12,789.50 toward Kaleb's college expenses.  He argues: (1) the trial court's child support calculation was erroneous, as it was not properly based on section

505(a)(1.5) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/505(a)(1.5) (West Supp. 2017)) or supported by the evidence; (2) the trial court erred in failing to credit Timothy for past-due child support owed by Kandra; (3) the trial court misapplied section 513 of the Marriage Act (750 ILCS 5/513 (West 2018)) by ordering Timothy to pay half of Kaleb's college expenses; and (4) section 513 of the Marriage Act (*id.*) is unconstitutional. For the reasons that follow, we affirm in part, vacate in part, and remand.

¶ 3                                I. BACKGROUND

¶ 4      The parties' marriage was dissolved on February 2, 2016. On October 5, 2016, the parties entered into a parenting plan, which provided for equal parenting time. On December 8, 2016, the parties reached an agreement resolving certain outstanding matters, and the agreement was read into the record. The parties further agreed that a written supplemental judgment would be prepared.

¶ 5      On August 1, 2017, the parties filed an agreed supplemental judgment for dissolution of marriage, which provided that Kendra was to pay Timothy $98.54 in weekly child support on behalf of Kaleb, retroactive to March 12, 2017, until Kaleb's emancipation.

¶ 6      On September 19, 2017, Kandra petitioned to modify the agreed supplemental judgment, alleging that Kaleb had been residing with her full-time since April 3, 2017, and that Timothy was employed and earning a substantial income. She asked that Timothy be ordered to pay child support to her retroactive to April 3, 2017.

¶ 7      On November 16, 2017, the parties entered an agreed order, terminating Kendra's child support obligations effective immediately. The court reserved the issue of the retroactivity of the termination and of Timothy's obligation to pay child support.

¶ 8 On June 21, 2018, Kandra filed a second petition to modify the agreed supplemental judgment, seeking payment of Kaleb's educational expenses. Kandra allege that Kaleb would be attending Wartburg College, beginning in the fall of 2018, at an estimated yearly expense of $51,276, not including living expenses. She asked that Timothy be ordered to pay one-third of the college expenses after grants and scholarships.

¶ 9 On August 16, 2018, Timothy filed a motion to declare section 513 of the Marriage Act (*id.*) unconstitutional. That motion was denied on September 24, 2018.

¶ 10 A hearing on Kandra's petitions took place on November 8, 2018. Kandra testified that, when the parties' marriage was dissolved, Timothy was working for a temporary staffing agency. After the agreed supplemental judgment was entered on August 1, 2017, she learned that Timothy had been rehired by his previous employer, Canadian Pacific Railway, as of July 1, 2017. She testified further that, although the parties had previously agreed to share equal parenting time of Kaleb, Kaleb moved in with her on April 3, 2017. He resided with her full-time until May 12, 2018, when he graduated from high school. Timothy provided no support for Kaleb after April 3, 2017.

¶ 11 According to Kandra, she should have paid child support only from March 12, 2017, through April 3, 2017, totaling $324.20. She testified that, instead, she paid $1173.36. Kandra asked that she be reimbursed $849.16, given that she was fully supporting Kaleb as of April 3, 2017. Kandra testified further that she was seeking $1147.04 in child support for the period from April 3, 2017, through July 1, 2017, based on Timothy's employment through the temporary agency. She testified that she was also seeking child support for July 1, 2017, through May 12, 2018 (Kaleb's graduation from high school), based on Timothy's salary at Canadian Pacific Railway. According to Kandra, she was owed child support totaling $11,593.85.

¶ 12    Kandra further testified that Kaleb began attending Wartburg College, a private school, in August 2018.    Kandra testified that tuition was $51,000 and that Kaleb received $25,000 in scholarships.    He also secured some loans.

¶ 13    Timothy testified that he began working at Canadian Pacific Railway on August 1, 2001. He was out of work for several years, due to an accident, and returned to work on July 1, 2017. Prior to returning to Canadian Pacific Railway, he worked at Metform through a staffing agency. Timothy agreed that Kaleb moved out of his house in April 2017.    From 2014 through 2017, he paid many expenses for Kaleb.    He did not pay any of Kaleb's expenses after April 2017.    Timothy testified that he learned on social media that Kaleb was planning to go to Wartburg.    He was not involved in helping Kaleb pick a college or in filling out financial applications.

¶ 14    Following the testimony, joint exhibit No. 2 was admitted into evidence.    It established that the cost of tuition at the University of Illinois for the 2017-18 school year was $12,036.    Additional other expenses, including fees and room and board, totaled $18,976.

¶ 15    In closing argument, Kandra's attorney stated as follows regarding the child support sought by Kandra:

> "It's then our calculation is that from the date that she was ordered retroactively to provide child support, March twelfth of '17 to April third, was 23 days.    She should have only paid that $98.54 for that period of time.    The remaining that she paid should be reimbursed to her which in one of the exhibits showing the totality of the payments through the State Distribution Unit she should receive back from [Timothy] $849.16 that he should not have received ***.

> So from April third of '17 to July seventh of '17 had he disclosed that he had— having had the order entered could have then had a Petition to Modify that was 96 days

that he should not have received support. In fact, he should have paid support based on his income at that time at Metform for a total of $1147.04."

Counsel continued:

"Then beginning on July seventh when he—that would have been the end of the first week he had worked back at Canadian Pacific we calculate that he would have paid $937.00 a month. Again, I run the dates 310 days then to graduation. The totality of what he would owe her back and what he would have paid for that until he got his job at Canadian Pacific and after would be $11,593.85."

¶ 16 On November 15, 2018, the trial court entered its memorandum decision and order. With respect to child support, the trial court found that "it is 'fit, reasonable and just' to allow the modification of support be retroactive to the September 19, 2017[,] filing date." It further stated: "The parties then minor child, [Kaleb,] turned 18 in September 2017, and graduated from high school in May 2018. Child Support at a rate of $37.40 per day for 230 days from September 19, 2017[,] to [Kaleb's] date of high school graduation, yields an arrearage of $8,602."

¶ 17 With respect to educational expenses, the court found that Kandra established that the expenses for Kaleb to attend Wartburg totaled $53,579. It further found that, when reduced by the scholarships and grants Kaleb received, "this year's cost subject to assessment under section 513 is $27,579." The court estimated that Kaleb could earn $2000 to contribute to that amount. It then divided the remaining amount, $25,579, equally between Kandra and Timothy.

¶ 18 Timothy filed a motion for reconsideration, which the trial court denied. Timothy timely appeals.

¶ 19                                          II. ANALYSIS

¶ 20     Timothy makes the following arguments: (1) the trial court's child support calculation was erroneous, as it was not based on section 505(a)(1.5) of the Marriage Act (750 ILCS 5/505(a)(1.5) (West Supp. 2017)) or supported by the evidence; (2) the trial court abused its discretion in failing to credit Timothy for past-due child support owed by Kandra; (3) the trial court misapplied section 513 of the Marriage Act (750 ILCS 5/513 (West 2018)) by ordering Timothy to pay half of Kaleb's educational expenses;; and (4) section 513 of the Marriage Act (*id.*) is unconstitutional.

¶ 21     Kandra did not file an appellee's brief. Courts of review generally will not serve as an advocate for the appellee. *Hess v. Hess*, 87 Ill. App. 3d 947, 949 (1980). "In such a situation, our supreme court's decision in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128 (1976), normally dictates that a court consider the merits of an appeal if the issues and the record are susceptible to easy decision, but that a court otherwise decide the case in favor of the appellant if the appellant establishes a *prima facie* case for reversal." *Mahoney v. Gummerson*, 2012 IL App (2d) 120391, ¶ 10. " '*Prima facie* means, "at first sight, on the first appearance; on the face of it, so far as can be judged from the first disclosure; presumably; a fact presumed to be true unless disproved by some evidence to the contrary." [Citation.]' " *Talandis*, 63 Ill. 2d at 132 (quoting *Harrington v. Hartman*, 233 N.E.2d 189, 191 (Ind. App. 1967)).

¶ 22     We first consider Timothy's challenge to the trial court's child support award. We review this issue for *prima facie* error, as we find that it is not susceptible to an easy decision. A child support judgment generally can be modified only upon a showing of a substantial change in circumstances. 750 ILCS 5/510(a)(1) (West 2018); *In re Marriage of Izzo*, 2019 IL App (2d) 180623, ¶ 25. Once the court determines that there has been a substantial change in circumstances warranting a modification, the court should look to the statutory guidelines to determine the new amount. *Id.* On review, a trial court's determination of the appropriate amount of child support

will not be reversed absent an abuse of discretion. *In re Keon C.*, 344 Ill. App. 3d 1137, 1142 (2003).

¶ 23    When the judgment of dissolution was entered, section 505(a)(1) of the Marriage Act established the child support guideline for one minor child to be 20% of the supporting party's net income. See 750 ILCS 5/505(a)(1) (West 2016). However, the Marriage Act was subsequently amended and, when Kandra filed her petition to modify, it provided as follows:

"(1.5) Computation of basic child support obligation. The court shall compute the basic child support obligation by taking the following steps:

(A) determine each parent's monthly net income;

(B) add the parents' monthly net incomes together to determine the combined monthly net income of the parents;

(C) select the corresponding appropriate amount from the schedule of basic child support obligations based on the parties' combined monthly net income and number of children of the parties; and

(D) calculate each parent's percentage share of the basic child support obligation.

Although a monetary obligation is computed for each parent as child support, the receiving parent's share is not payable to the other parent and is presumed to be spent directly on the child." 750 ILCS 5/505(a)(1.5) (West Supp. 2017).

¶ 24    Timothy argues that the trial court's child support calculation was not based on the new statutory language or supported by the evidence. First, we note that, although the trial court did not explicitly state that it was applying the new statutory guidelines, it seemingly adopted Kandra's calculation, which, as Timothy concedes, was "based upon applying the income shares statute."

Nevertheless, we find that Timothy has established *prima facie* error with respect to his argument that the trial court's calculation was not supported by the evidence.

¶ 25    As testified to by Kandra and argued by her attorney in closing, Kandra's calculation of Timothy's child support obligation was based on the following:

| Time Period | Amount Sought | Basis of Calculation |
|---|---|---|
| 4/3/17-7/7/17 | $1147.04 | Timothy's salary from temp agency, earned after Kaleb moved in with Kandra |
| 7/7/17-5/12/18 *Referred to as "310 days" by counsel* | $937/mo. | Timothy's salary at railroad, from the time he returned to work until Kaleb's graduation. |
| | $849.16 | Reimbursement for support paid after 4/3/17 |

Kandra asserted that the total child support due, based on the above, was $11,593.90.

¶ 26    The trial court awarded a *per diem* child support amount of $37.40.  It appears that the trial court divided the total that Kandra requested, $11,593.90, by the 310-day period ($11,593.90 ÷ 310 = $37.40).  The court then applied that *per diem* to the 230 days since Kandra filed her petition, on September 19, 2017.

¶ 27    We find *prima facie* error in the trial court's *per diem* calculation.  Having chosen the 310-day period as its denominator, the court had no apparent basis for using Kandra's grand total as its numerator, producing the *per diem* of $37.40.  Rather, as Timothy suggests, it appears that the court should have started with Kandra's monthly child support calculation for the 310-day period, $937.  As Timothy points out, "This monthly award, converted to a per-diem, is $30.81 day" ($937 x 12 ÷ 365 = $30.81).  Even if the court included the amount that it credited Kandra for

reimbursement—$849.16—that is only an additional $3.69 per day. Thus, the court's *per diem* calculation seems unsupported by the evidence.

¶ 28    We note that Timothy also asserts that the court should have used "a shared physical care worksheet" under section 505(a)(3.8) of the Marriage Act (*id.* § 505(a)(3.8)). Timothy contends that, "since the parties' parenting time [per the December agreement] had not been modified," the "shared parenting" provision should have continued to apply, despite the fact that Kaleb had moved out. Timothy cites nothing to support this argument. In any event, section 505(a)(3.8), by its terms, applies only where "each parent exercises 146 or more overnights per year with the child." *Id.* That was no longer occurring; indeed, this was the precise basis for Kandra's petition to modify child support.

¶ 29    Nevertheless, based on the foregoing, we find that Timothy has established *prima facie* error in the court's calculations. Accordingly, we vacate the trial court's award of child support and remand for reconsideration. The court is free to impose the same award or to recalculate the award, but in either case, we direct the court to provide an explanation for its calculations.

¶ 30    We find that the remainder of Timothy's arguments may be easily decided and are without merit. We address each in turn.

¶ 31    Timothy argues that the court abused its discretion in failing to credit him for child support owed by Kandra under the agreed supplemental judgment. According to Timothy, Kandra was ordered to pay Timothy $98.54 in weekly child support starting March 12, 2017. In its decision, the court modified the child support obligation retroactively to September 19, 2017. Despite the fact that the undisputed evidence established that Kaleb moved out of Timothy's house on April 3, 2017, and that Timothy provided no support after that time, Timothy argues that Kandra owed him $1191.60 in child support from March 12, 2017, through September 19, 2017. Timothy cites

no authority to support this argument. Therefore, we consider it forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018); *Holmstrom v. Kunis*, 221 Ill. App. 3d 317, 325 (1991). In any event, we observe that the court credited Timothy for the time that Kaleb lived with him.

¶ 32    Next, Timothy argues that the trial court misapplied section 513 of the Marriage Act (750 ILCS 5/513 (West 2018)) when it ordered him to pay $12,789 toward Timothy's educational expenses at Wartburg. As Timothy challenges the trial court's interpretation of the statute, we review the issue *de novo*. See *In re Marriage of Rogers*, 213 Ill. 2d 129, 135-36 (2004).

¶ 33    Section 513 of the Marriage Act provides, in relevant part, as follows:

"(a) The court may award sums of money out of the property and income of either or both parties *** , as equity may require, for the educational expenses of any child of the parties. ***

* * *

(d) Educational expenses may include, but shall not be limited to, the following:

(1) except for good cause shown, the actual cost of the child's post-secondary expenses, including tuition and fees, provided that the cost for tuition and fees does not exceed the amount of in-state tuition and fees paid by a student at the University of Illinois at Urbana-Champaign for the same academic year;

(2) except for good cause shown, the actual costs of the child's housing expenses, whether on-campus or off-campus, provided that the housing expenses do not exceed the cost for the same academic year of a double-occupancy student room, with a standard meal plan, in a residence hall operated by the University of Illinois at Urbana-Champaign;

(3) the actual costs of the child's medical expenses, including medical insurance, and dental expenses;

(4) the reasonable living expenses of the child during the academic year and periods of recess[; and]

\* \* \*

(5) the cost of books and other supplies necessary to attend college.

\* \* \*

(j) In making awards under this Section, or pursuant to a petition or motion to decrease, modify, or terminate any such award, the court shall consider all relevant factors that appear reasonable and necessary, including:

(1) The present and future financial resources of both parties to meet their needs, including, but not limited to, savings for retirement.

(2) The standard of living the child would have enjoyed had the marriage not been dissolved.

(3) The financial resources of the child.

(4) The child's academic performance."  750 ILCS 5/513 (West 2018).

¶ 34    According to Timothy, "the starting point of the analysis under section 513 should be the total cost of attending University of Illinois," which the parties calculated at $31,012.  He argues that the court should have then applied subsection (j) and reduced that amount by the total of the grants and scholarships awarded to Kaleb to attend Wartburg, which the court found to be $26,000. He concludes that the court should have reduced the $31,012 by the $26,000 and should have ordered the parties to split only the remainder.  We disagree, as Timothy simply misreads the statute.  The statute requires that the parties divide Kaleb's actual cost to attend Wartburg, provided

that this actual cost does not exceed the cost to attend the University of Illinois. As noted, Kaleb's actual cost to attend Wartburg, given his $26,000 in grants and scholarships, is less than the cost to attend Illinois. Thus, the court properly ordered the parties to divide that full cost.

¶ 35 Timothy cites no authority to support a contrary interpretation. Instead he cites *People ex rel. Sussen v. Keller*, 382 Ill. App. 3d 872 (2008). There, the court held that directing a father to pay the cost for his son to attend a private automotive school when adequate public school was available was an abuse of discretion. Here, however, Timothy does not argue that Wartburg is not an appropriate college for Kaleb or that he should have instead attended the University of Illinois. Rather, he argues only that the court improperly applied the statute. However, based on the plain language of the statute, given that the actual cost to attend Wartburg is less than the cost at the University of Illinois, we find no error in the court's order that Timothy and Kendra split $25,579 equally.

¶ 36 Last, Timothy argues that section 513 of the Marriage Act (750 ILCS 5/513 (West 2018)) is unconstitutional. More specifically, he contends that it violates the equal protection clause of the United States Constitution (U.S. Const., amend. XIV) as it requires divorced couples to pay for the college expenses of their children while not requiring the same of married couples. This argument was rejected with respect to a prior version of this statute in *Kujawinski v. Kujawinski*, 71 Ill. 2d 563, 577-82 (1978). Nevertheless, Timothy directs us to an order of the circuit court of Du Page County, which declared section 513 unconstitutional on this basis. However, since the filing of his brief, the circuit court's order was appealed directly to the Illinois Supreme Court. See *Yakcich v. Aulds*, 2019 IL 123667. The supreme court vacated the order, holding that the circuit court committed "serious error" in failing to follow *Kujawinski*. *Id.* ¶ 13. It stated that "[o]ur circuit and appellate courts are bound to apply this court's precedent to the facts of the case

before them under the fundamental principle of *stare decisis*." *Id.* Accordingly, we decline Timothy's invitation to declare section 513 of the Marriage Act unconstitutional.

¶ 37                              III. CONCLUSION

¶ 38    For the reasons stated, we vacate the trial court's award of child support and remand for reconsideration. On remand, the court is free to impose the same award or to recalculate the award, but in either case, we direct the court to provide an explanation for its calculations. We otherwise affirm.

¶ 39    Affirmed in part and vacated in part; cause remanded.