# Illinois Official Reports

## Appellate Court

---

### *In re Marriage of Sorokin*, 2017 IL App (2d) 160885

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF NATASHA SOROKIN, Petitioner-Appellant, and ARON SOROKIN, Respondent-Appellee. |
| District & No. | Second District<br>Docket No. 2-16-0885 |
| Rule 23 order filed<br>Motion to publish allowed<br>Opinion filed | June 8, 2017<br><br>August 8, 2017<br>August 8, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 13-D-834; the Hon. Elizabeth M. Rochford, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Lawrence S. Starkopf, of Lawrence S. Starkopf, P.C., of Highland Park, for appellant.<br><br>Clare McMahon, of Northfield, for appellee. |
| Panel | JUSTICE SPENCE delivered the judgment of the court, with opinion.<br>Justices Burke and Birkett concurred in the judgment and opinion. |

¶ 1 Petitioner, Natasha Sorokin, appeals a postdissolution order granting the petition of respondent, Aron Sorokin, to modify his child-support obligation. We affirm.

¶ 2 The parties were married in 1999 and have three children, all minors. On May 2, 2013, petitioner petitioned to dissolve the parties' marriage. On August 2, 2013, the trial court awarded joint custody under a joint-parenting agreement, with petitioner as the primary residential parent. On October 8, 2013, the court ordered respondent to pay temporary child support of $1700 per month, based on a finding that his net income, primarily from his employment at Allstate, was $5312.50 per month. The support amount was 32% of respondent's net income, in accordance with the guideline for supporting three children (see 750 ILCS 5/505(a)(1) (West 2012)). On February 25, 2014, petitioner petitioned to increase child support, alleging that respondent received additional income from A&N, his computer-related business. On July 14, 2014, the court increased respondent's obligation to $1950 per month, finding that this was 32% of his net income, and reserved the issue of retroactivity.

¶ 3 On October 27, 2014, the court held a prove-up hearing at which respondent did not appear, either in person or through counsel. As pertinent here, petitioner testified as follows. Her annual income was $125,000 in base salary with a $20,000 bonus. To the best of her knowledge, respondent's annual income from Allstate exceeded $100,000. Documents obtained in discovery showed that in 2012 respondent deposited approximately $280,000 into A&N's bank account. The parties' joint tax return for 2012 listed the gross income from A&N at $46,974. Respondent had filed an amended tax return for 2012 that listed the gross income from A&N as $217,000; its cost of goods as $201,466; its business expenses as $10,000; and its net income as $5510. However, petitioner and her accountant had calculated gross receipts of $265,493 and a net income of $198,267.

¶ 4 Petitioner testified further that, to her knowledge, respondent had not yet filed a tax return for 2013. A document prepared by his accountant stated that, for 2013, A&N's gross receipts were $113,000 but its net income was only $1000. Petitioner and her accountant had concluded that, for less than all of 2013, A&N had gross receipts of $170,000 and a net income of $95,000.

¶ 5 Petitioner testified that, although the court increased respondent's monthly child-support obligation to $1950, she had not received any payments at the new level. A&N had been functioning since 2008 or 2009. Although respondent had represented that the business closed in 2013, the parties' joint e-mail account still received inquiries from potential customers.

¶ 6 On April 13, 2015, the court entered a dissolution judgment, incorporating the joint-parenting agreement. As pertinent here, it provided as follows. Petitioner's gross annual income consisted of a base salary of approximately $125,000 and a bonus of $20,000. Respondent's gross annual income from Allstate was approximately $100,000, and his net income was estimated at $74,000. Additionally, he was the proprietor of A&N, an active business.

¶ 7 The court stated that, in determining A&N's income, it considered various sources. The 2012 joint tax return reported A&N's gross receipts as $46,974 and profit as $396.

Respondent's amended return listed A&N's gross receipts as $217,579; its adjusted gross income as $16,113; and its net income as $5510. Petitioner's testimony that respondent had underreported his income was not credible. Respondent had not yet filed a tax return for 2013. Because he had not complied fully with discovery or appeared at trial, it was difficult to determine A&N's income. The court found that, for 2012, A&N's gross receipts were $265,000; the cost of the business was $159,000; the gross income was $106,000; and the net income was $78,000. Thus, respondent's total net income was $152,000. Based on the 32% guideline, the court set his child-support obligation at $4053.33 per month, retroactive to February 28, 2014.

¶ 8 On January 29, 2016, respondent filed his petition to reduce child support. It alleged as follows. Respondent no longer operated A&N. He received a gross annual salary of approximately $97,000 from Allstate, but no other income. He could not afford to pay the present level of child support. He requested that the court reduce his obligation and reallocate the division of payments toward the children's education, uncovered medical bills, and other expenses.

¶ 9 On April 13, 2016, petitioner petitioned for a rule to show cause against respondent, alleging that he was in arrears in paying child support and several marital debts. On June 28, 2016, she moved per section 2-619(a)(4) of the Code of Civil Procedure (735 ILCS 2-619(a)(4) (West 2014)) to dismiss respondent's petition as barred by *res judicata*, alleging that it was in reality a collateral attack on the dissolution judgment and not based on any change in circumstances after April 13, 2015.

¶ 10 On June 28, 2016, and July 1, 2016, the trial court held a combined hearing on respondent's petition to reduce child support and petitioner's petition for a rule to show cause. Initially, the court denied petitioner's section 2-619(a)(4) motion to dismiss, holding that it was untimely and stating that respondent's petition was not a collateral attack on the dissolution judgment but was based on an alleged change in circumstances since then. The court then heard evidence, which we summarize insofar as it is pertinent to this appeal.

¶ 11 Respondent testified on direct examination as follows. His current child-support obligation was approximately $3200 per month. He was also obligated to pay $67 monthly toward the children's medical expenses and 50% of their expenses for their tutoring, athletics, and other extracurricular activities. In particular, his financial affidavit listed expenses of $403 per month for clubs and summer camps. He could not afford the current level of child-support payments. He was spending far less on nonessentials than he had in 2013, and he no longer took vacation trips with the children.

¶ 12 Respondent testified that, in 2015, his income from all sources was approximately $96,000. According to his financial affidavit, his current gross income was approximately $8239 per month. He owed $13,000 in back federal taxes and had debts on three credit cards. His 401(k) account with Allstate contained $18,605. He had rolled over his IRA from Walgreens, his prior employer, into an account with J.P. Morgan Chase; it currently contained $2195. Respondent had no bank accounts other than his personal checking account, which contained roughly $50 to $100.

¶ 13 Respondent testified that, in the spring of 2015, he was no longer running A&N because it was not making money despite the many hours he had been spending on it. He did not pay A&N's registration fees for 2014, 2015, or 2016. He had not attempted to sell the business because he did not think that it had any value.

¶ 14    Respondent testified on cross-examination as follows. He stopped running A&N in 2013, "[r]ight around the time" that petitioner filed her dissolution petition. Notwithstanding the gross receipts that he had deposited into A&N's bank account in 2012, and the statements in the 2012 tax return and amended tax return, A&N had not been making any profit. Respondent had filed a tax return for 2013; he agreed that the return listed $113,005 in gross receipts for A&N. He and petitioner had had access to A&N's account and had occasionally paid taxes and family expenses out of it. However, his discontinuing A&N did not cut off the flow of money to pay these expenses, as by then it was no longer generating income and the account balance was already negative.

¶ 15    On redirect examination, respondent testified that A&N had bought computer parts and resold them at a markup. In 2012, he spent 10 to 20 hours per week working on the business. The company earned a profit of less than $50,000 that year, and in 2013 it earned less than it had in 2012.

¶ 16    Petitioner testified that her annual base salary was $150,000. She was not paying a mortgage, as the former marital home was in foreclosure. She drove a 2016 Lexus and had spent $18,000 on vacations with the children in 2015. She and respondent contributed equally to the children's medical and extracurricular activities.

¶ 17    At the close of the evidence, the court issued a rule to show cause as to some of the unpaid obligations that petitioner had alleged. On respondent's petition to reduce child support, the court held as follows. The dissolution judgment had resulted from "[a]n ex parte trial" and was based on petitioner's evidence. In the judgment, the court had acknowledged that accurately establishing respondent's income had been difficult and that the court had relied on what little evidence it had had. As to the evidence at the hearing on respondent's petition, the court credited his testimony that he was not now earning any income from A&N. It found further that he had ceased operating A&N sometime before April 13, 2015. Further, he had acted in good faith in terminating A&N, which had not been profitable.

¶ 18    The court acknowledged that the evidence had shown that the change in circumstances had actually occurred before the court entered the dissolution judgment. Although the judgment had found that, as of April 13, 2015, respondent's annual net income from A&N was $78,000, that had been incorrect. Thus, although respondent's present net income was far less than what the court found on April 13, 2015, the same had been true at the time of the judgment. Nonetheless, the court would not deny respondent relief merely because the change in circumstances had predated the judgment. "[F]or the Court to continue to impute [to] A&N income when the evidence so clearly supports the finding *** that the A&N business is closed would have an absurd result and would continue to create a situation where Respondent has an absolute inability to pay *** the inflated child support number."

¶ 19    The court reduced respondent's support obligation to 32% of his present net income from Allstate, based on the finding that he was no longer earning income from A&N. The reduction was made retroactive to February 1, 2016. The court denied respondent any relief as to the other child-related expenses; the parties would continue to divide these equally.

¶ 20    On petitioner's contempt petition, the court found respondent in contempt only as to his failure to value and divide his 401(k) account, and it continued the matter for calculating the value of the account and sentencing.

¶ 21    On August 8, 2016, the court entered an order embodying its findings and continuing the cause for calculating child support. On September 23, 2016, it entered a judgment setting

respondent's child-support obligation at $1828 per month, based on a net income of $5712.50 per month. The order also required respondent to purge his contempt by transferring the remainder of the J.P. Morgan Chase IRA to petitioner. On October 21, 2016, petitioner filed an appeal from the orders of August 8, 2016, and September 23, 2016.

¶ 22    On appeal, petitioner argues first that the trial court erred in denying her section 2-619(a)(4) motion to dismiss respondent's petition. We do not address the merits of this argument. On an appeal, it is not proper to raise the denial of a section 2-619 motion to dismiss, as the result of the denial merged with the final judgment from which the appeal was taken. *In re J.M.*, 245 Ill. App. 3d 909, 919-20 (1993); *Davis v. International Harvester Co.*, 167 Ill. App. 3d 814, 818-19 (1988).[1]    Therefore, we turn to petitioner's remaining argument on appeal.

¶ 23    Petitioner contends that the judgment reducing respondent's child-support obligation was against the manifest weight of the evidence. She asserts that the court erred because (1) the change in circumstances occurred before and not after April 13, 2015, when the court entered the dissolution judgment, and (2) A&N had been profitable, and thus respondent terminated it in bad faith. We see no merit to either assertion.

¶ 24    We turn to the first assertion of error. A trial court's finding of a substantial change in circumstances may not be disturbed on appeal unless it was against the manifest weight of the evidence. *In re Marriage of Armstrong*, 346 Ill. App. 3d 818, 821 (2004). For the reasons that follow, we hold that the finding was not against the manifest weight of the evidence.

¶ 25    Initially, we note what petitioner does *not* argue. She does not contend that the evidence failed to prove that respondent's net income from January 29, 2016, on was substantially less than what the trial court had found it was as of April 13, 2015. Indeed, she does not contest the trial court's finding that respondent's net income was essentially his salary from Allstate. Thus, she effectively concedes that, as of January 29, 2016, respondent's child-support obligation under the judgment far exceeded the statutory guideline of 32% of his net income. (Whether the excessiveness resulted from respondent's own bad-faith decision is a separate issue, which we address next.) Thus, petitioner is not really contending, and cannot contend, that the evidence of changed circumstances was insufficient to justify the reduction in respondent's obligation.

¶ 26    Indeed, petitioner is essentially arguing that respondent's evidence of changed circumstances was *too* good. She contends that the evidence proved that the change not only occurred but occurred much earlier than respondent alleged—and that, for this reason, he did not deserve relief. Thus, for example, had respondent proved only that he stopped receiving income from A&N as of January 29, 2016, petitioner would concede now that there had been changed circumstances. But, she contends, because he proved that he actually lost his source of extra income in April 2013, he was not entitled to any relief. Thus, she asks us to reverse the denial of the reduction in respondent's obligation—not on the conventional ground that

---

[1]In any event, petitioner's motion was unsound. Respondent did not seek (or receive) any modification of the original judgment. He sought only a prospective reduction in his child-support obligation, based on his allegation that the circumstances of January 29, 2016, were substantially different from those set out in the judgment. He did not request that the trial court reduce the amount of child support due before January 29, 2016, and, of course, the court had no power to order such a reduction (see 750 ILCS 5/510(a) (West 2014)).

he had not become poorer, but on the novel ground that he had actually become poorer much sooner.

¶ 27 The trial court rightly pointed out the absurdity inherent in petitioner's argument. To continue to impose an excessive and unaffordable obligation on respondent merely because he overproved his case would deny him the relief that he would have received had his evidence been less compelling. Moreover, such an absurd result was not compelled by either statute or case law. Respondent *did* prove changed circumstances.

¶ 28 To obtain a reduction in his or her child-support obligation, a parent must prove that there has been a substantial change in circumstances since the entry of the prior support order. 750 ILCS 5/510(a)(1) (West 2014); *In re Marriage of Saracco*, 2014 IL App (3d) 130741, ¶ 11. Respondent did so. Crucially, the original judgment was *res judicata* as to the facts that existed at the time of the judgment. See *Nye v. Nye*, 411 Ill. 408, 416 (1952); *In re Marriage of Heldebrandt*, 301 Ill. App. 3d 265, 268 (1998). Thus, the trial court was bound by its finding that, as of April 13, 2015, respondent's net income was approximately $152,000. And the evidence from the hearing on his petition amply demonstrated that, from January 29, 2016, on, his net income was far less—essentially, as the court found, the $74,000 in take-home pay from Allstate. On this basis alone, we must conclude that the trial court's finding of a substantial change in circumstances was not against the manifest weight of the evidence. Therefore, we need not consider the additional evidence of changed circumstances that respondent notes, such as the increase in petitioner's salary, her ownership of a luxury automobile, and the presumption that the children's expenses had increased with their ages and the cost of living (see *In re Marriage of Sweet*, 316 Ill. App. 3d 101, 105 (2000)).

¶ 29 We turn to the second assertion of error. Petitioner contends that because the trial court had found in the dissolution judgment that A&N had earned a net income of $78,000 in 2012, and because respondent had deposited money into A&N's account in early 2013, the trial court erred in finding that he terminated the business in good faith. Thus, she contends, the court should have imputed additional income to him.

¶ 30 We note that petitioner's cursory argument cites neither pertinent pages of the record nor any legal authority. Therefore, we consider it forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016); *Holmstrom v. Kunis*, 221 Ill. App. 3d 317, 325 (1991).

¶ 31 In any event, petitioner has not established error. She is correct that, to have his support obligation decreased, based on a voluntary change in employment, the supporting parent must prove that he made the change in good faith and not to evade his financial responsibility to his children. *Sweet*, 316 Ill. App. 3d at 106. The trial court found that respondent's decision to close down A&N (essentially a change in employment) was made in good faith. We cannot say that this conclusion was against the manifest weight of the evidence.

¶ 32 Petitioner notes the timing of respondent's decision and the evidence of how much he deposited into A&N's bank account in 2012 and the first quarter of 2013. The trial court was aware of this evidence, but it was also aware of, and entitled to credit, other evidence that pointed to good faith. At the hearing that preceded the entry of the dissolution judgment, the court received evidence that, in 2013, A&N made a profit of only about $1000, down from $5510 in 2012. It also heard evidence that respondent had been spending 10 to 20 hours per week on the business, in addition to his full-time employment with Allstate. Respondent discontinued the business in light of his difficult financial condition, the depletion of his retirement account, and the limitations on his activities with the parties' children. Although

the evidence did not all count one way or the other, there was sufficient ground for the court to conclude that his decision to terminate A&N was made in good faith.

¶ 33 For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

¶ 34 Affirmed.