2019 IL App (2d) 180623
Nos. 2-18-0623 & 2-18-0769 cons.
Opinion filed October 15, 2019

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF<br>KRIS M. IZZO, | ) )<br>) | Appeal from the Circuit Court<br>of Du Page County. |
| Petitioner-Appellee, | )<br>) | |
| and | )<br>) | No. 07-D-2 |
| ROBERT J. IZZO, | )<br>) | Honorable<br>Robert E. Douglas, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices Zenoff and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1   In August 2017, respondent, Robert J. Izzo, petitioned to reduce his $6500 monthly child-support obligation to petitioner, Kris M. Izzo. He argued that a substantial change in circumstances had occurred since the entry of the most recent support judgment, which was the original judgment dissolving the parties' marriage nine years prior. Robert set forth the following bases for a substantial change: (1) he had increased his share of overnight custody from 15% to 45%; (2) Kris had experienced an increase in wealth and income; and (3) he was forced to retire and is no longer earning income from employment. The court rejected each of these bases, explaining that (1) Robert's increased share of custody was too remote, having occurred five years after the original judgment but four years before the petition to modify; (2)

Kris's increase in wealth was anticipated at the time of the original judgment; and (3) Robert's retirement was entirely voluntary. Robert appeals.

¶ 2     We hold that the trial court made an error of law when it found the change in custody to be too remote to constitute a substantial change in circumstances. The circumstances at the time of a petition to modify must be measured against the circumstances at the time of the most recent support judgment, not against the circumstances at some time between the two events. The change in custody alone is enough to establish a substantial change in circumstances justifying a reduction in the child-support amount. Therefore, we need not consider the additive effects, if any, of the other changes Robert alleged to establish a substantial change. We reverse the trial court's judgment and remand for a determination of the proper child-support amount in light of the change in custody. On remand, in setting the new support amount, the trial court can consider Kris's, as well as Robert's, wealth and Robert's retirement.

¶ 3                              I. BACKGROUND

¶ 4     Robert and Kris married in 1988. They had three sons: R.I. (born in 1990), E.I. (born in 1994), and B.I. (born in 2004). Kris petitioned for divorce in 2007, and the trial court entered a judgment of dissolution in August 2008, which incorporated the parties' marital settlement agreement and joint parenting agreement. At the time of the divorce, Robert worked for Chase Bank and earned $1.6 million annually from employment. In some, but not all, of the years immediately preceding the divorce, his income from all sources exceeded $2 million annually. Kris did not work outside the home, although she had previously worked as an accountant.

¶ 5     The marital estate contained approximately $10 million in assets. The dissolution judgment ordered a 60/40 split in Kris's favor of $7.5 million in nonretirement assets and a 50/50

split of $2.5 million in retirement assets. Thus, Kris's property award was approximately $5.75 million and Robert's was approximately $4.25 million.

¶ 6    In addition, Robert paid Kris an $850,000 lump sum in lieu of maintenance. The judgment noted that the lump sum would further enable Kris to support herself. It also instructed that each party was to inform the other of his or her place of employment.

¶ 7    The judgment set forth the following custody arrangement. R.I., who was 17 and nearly emancipated, lived primarily with Robert. E.I., who was 14, split his time equally with both parents, both of whom lived in Naperville. B.I., who was 4, spent 12 of 14 nights with Kris and the other 2 with Robert. B.I. also spent Wednesday evenings (with no overnights) and alternating Saturday afternoons with Robert.

¶ 8    The judgment ordered Robert to pay Kris $6500 monthly in child support, for B.I. only. The judgment reserved the question of support as to R.I. and E.I. Robert was solely responsible for providing all of the children with health insurance and paying for extraordinary medical expenses. The parties were to equally split costs associated with ordinary medical expenses, education, extracurricular activities, and child care. Each party would be responsible for day-to-day costs, such as food, clothing, and shelter, when a child was in his or her home.

¶ 9    In September 2008, Robert moved to reconsider the judgment. He alleged that, after the judgment was entered, his supervisor at Chase informed him that he would not be retained in his present position. Either he would lose his job entirely or he would be placed in a new position with a substantial reduction in income. The trial court denied the motion. Robert appealed. See *In re Marriage of Izzo*, No. 2-08-0934 (2009) (unpublished order under Illinois Supreme Court Rule 23). This court affirmed, holding that the information concerning Robert's potential change

in employment was not evidence but was in the nature of an opinion. *Id*. at 4. Thus, the original judgment remained in effect.

¶ 10    In 2010, Robert "was separated from" his employment with Chase. A former coworker at Chase was then running a risk group at Freddie Mac, and she helped him obtain employment there. Robert's annual income from employment at Freddie Mac was approximately $1 million. Robert did not seek a reduction in child support due to a reduction in income.

¶ 11    Robert's office at Freddie Mac was located in Virginia. He arranged a commuter schedule that allowed him to continue living in Naperville, so that he could continue to be heavily involved in his children's lives. One week, he worked from home in Naperville and the next week, he worked three to four days in Virginia The schedule caused no disruption to his custody arrangement. After working for Freddie Mac for two years, Robert was granted even more flexibility. He worked in Virginia just two days every other week.

¶ 12    In 2012, Robert petitioned to modify custody as to B.I., then age 8. Because Robert sought to be the primary custodian, he also sought to cancel his child-support obligation. However, in 2013, Robert *withdrew* his petition, as well as his request concerning support, and the parties entered into a settlement agreement concerning custody. Pursuant to the agreement, B.I. spent 6 of every 14 nights with Robert, amounting to a 43/57 custodial split. Accounting for certain holidays and vacations, the split was closer to 45/55. The new custody order expressly stated that all other provisions of the original judgment remained in full force and effect. The original judgment remained the most recent support order.

¶ 13    In the meantime, both older boys had attained majority. Robert paid the entirety of the costs associated with their undergraduate college educations. R.I. attended Lewis University and then returned home to reside with Robert, through the date of the instant proceedings. E.I. was

completing his degree at the University of Illinois. Costs to date for E.I. alone were approximately $135,000. Robert did not ask Kris to contribute.

¶ 14    In 2015, Robert experienced health problems. He had quadruple bypass surgery. Following the surgery, he suffered from shingles. These events caused him to miss four months of work, through the fall of 2015. When he returned to work, the atmosphere was different. The person who had hired him was gone. The supervisor who took her place wanted Robert to spend significantly more time in Virginia, four to five days per week. In the spring of 2016, Robert was verbally told by two supervisors that he would be required to work in Virginia. Robert considered this to be an effective order to relocate to Virginia. Robert told his supervisors that the new arrangement was a "non-starter," because he did not want to lose parenting time with B.I., then age 11.

¶ 15    Robert would not continue to work for Freddie Mac long term. Under a verbal agreement, Robert would continue to work through September 2016. Then, in October 2016, Robert entered into a written severance agreement with Freddie Mac. Under that agreement, Robert would help Freddie Mac find his replacement. Robert would receive $500,000 as reduced compensation through September 2017. He did not work during the period of reduced compensation.

¶ 16    On August 20, 2017, Robert, then age 59, petitioned to modify child support. In his amended petition, Robert set forth three bases for the modification: (1) he had increased his share of overnight custody from 15% to 45% since the original judgment, (2) Kris had experienced an increase in wealth and income, and (3) he was forced to retire and is no longer earning income from employment.

¶ 17    At the hearing, Robert testified as set forth above. Kris was the only other witness to testify. As to the issue of respective wealth, each party submitted a 2017 financial affidavit. The affidavits and testimony showed that each party had a net worth of approximately $8 million. Each party lived primarily on passive income, with Kris receiving approximately $15,000 monthly and Robert receiving approximately $8000. In addition, Kris earned $30,000 annually through her part-time employment as an office worker at a private grammar school. (She performed accounting work, but she no longer held a CPA license.) Kris owned two homes, a single-family home in Naperville and a condominium in Chicago. Their total value was approximately $1 million, and neither property carried a mortgage. Kris owned two cars, a 2008 Lexus (with a $4000 market value) and a 2015 Tesla. She purchased the 2015 Tesla with $90,000 cash. She had no car payments. Robert owned one home, valued at $600,000, with $285,000 remaining on the mortgage. Robert owned three cars: a 2001 Volvo (with a negligible market value), a 2007 Audi (with a $5000 market value), and a 2013 BMW (with a $20,000 market value). (His household had three drivers, including R.I. and E.I.) Each party spent just over $2000 monthly on country club dues. As for vacations and clothing, Kris outspent Robert by $800 per month. Both parties spent equally on vacations with B.I.

¶ 18    As to Robert's retirement, he conceded that the initial discussions with his supervisors were not documented in writing. He was unable to submit a written order from them that he must work out of the Virginia office. He was, however, able to produce a copy of his written severance agreement. Robert did not communicate with Kris about the new requirement that he work in Virginia. He did not attempt to set a new custody arrangement with Kris that would have allowed him to work four to five days per week in Virginia. He explained that any work schedule requiring him to be in Virginia five days per week was incompatible with continued

heavy involvement in his sons' lives in Illinois and thus there was no point in discussing it. He did not inform Kris of the change in his employment until August 2017, when he petitioned to modify child support.

¶ 19    Robert further conceded that at no time between his October 2016 separation from Freddie Mac and the May 2018 hearing did he conduct a job search. He admitted that he made no efforts to seek substitute employment. He sent out zero applications; he went on zero interviews. Given his age, he did not think he was likely to find comparable employment in the Chicago area. However, he believed that his financial resources, including passive income, were sufficient to provide for B.I. and, though optional, his other sons.

¶ 20    The trial court denied the petition to modify, finding no substantial change in circumstances. The court determined that Kris's increase in wealth, employment income, and passive income could not constitute a substantial change in circumstances, because such increases were contemplated at the time of the original judgment. The court also determined that Robert's unemployment could not constitute a substantial change in circumstances, because it was voluntary. He did not want to work four to five days per week in Virginia, nor did he want to conduct a job search in Chicago.

¶ 21    Finally, the court determined that Robert's increased parenting time, now roughly equal to Kris's, could not constitute a substantial change in circumstances, because the change occurred five years prior. It stated:

> "Robert's increase in parenting time was granted in 2013, almost five years before his petition to modify the child support. Robert argues that a change in circumstances is anything that occurs after the [most recent] support order. While as a general principle this may be true, a reasonable timeframe must be applied and the court rules that an event

that occurred [five] years ago is too remote to be viewed as a change that gives rise to a modification of child support today."

¶ 22    This appeal followed.

¶ 23                                    II. ANALYSIS

¶ 24    Robert challenges the trial court's determination that no substantial change in circumstances occurred.  Again, he cites three bases in support of a substantial change: (1) he had increased his share of overnight custody from 15% to 45% since the original judgment, (2) Kris had experienced an increase in wealth and income, and (3) he was forced to retire and is no longer earning income from employment.  Robert initially asked this court to take an additive approach to the three factors, to determine if, en masse, they constituted a substantial change.[1] However, as Robert recognized in his reply brief and at oral argument, reliance on a single factor may be appropriate when that factor alone is sufficient to establish a substantial change.  See, *e.g.*, *In re Marriage of Sorokin*, 2017 IL App (2d) 160885, ¶ 28.  That is the approach we take here.  As we will explain, the change in custody alone is sufficient to establish a substantial change.  The other factors, merely additive if we were to agree with Robert's view of them, are not necessary to our analysis.  A substantial change is a threshold that need be crossed only once before proceeding to determine a new support amount.

---

[1] In this vein, Robert cited *In re Marriage of Verhines*, 2018 IL App (2d) 171034, ¶¶ 81, 89.  However, *Verhines* primarily concerned a multifactor assessment of the obligor parent's financial position in retirement, in light of his allegation that he had a reduced ability to pay support.  Here, Robert concedes that he has no reduced ability to meet the present support amount.  Also, here, we do not focus on the issue of Robert's retirement.  (We focus on the change in custody.)  Therefore, we do not further discuss *Verhines*.

¶ 25   A child-support judgment generally can be modified only upon a showing of a substantial change in circumstances. 750 ILCS 5/510(a)(1) (West 2018); *In re Parentage of I.I.*, 2016 IL App (1st) 160071, ¶ 53. A substantial change in circumstances typically means that the child's needs, the obligor parent's ability to pay, or both have changed since the entry of the most recent support order such that a modification of the support amount is warranted. See, *e.g.*, *In re Marriage of Pylawka*, 277 Ill. App. 3d 728, 731 (1996). "The burden of showing a substantial change in circumstances sufficient to justify a modification of a child support award is on the party seeking the relief." *In re Marriage of Kern*, 245 Ill. App. 3d 575, 578 (1993). Once the court determines that there has been a substantial change in circumstances warranting a modification, then the court should look to the statutory guidelines to determine the new amount. *In re Marriage of Stockton*, 169 Ill. App. 3d 318, 325 (1988). Thus, the decision to modify child support is a two-step process. First, the court must find a substantial change in circumstances. Second, the court must look to the statutory factors to determine the new amount. In this case, the court found no substantial change, so it did not reach the second step.

¶ 26   Addressing Robert's claim on appeal requires more than one standard of review. We review the trial court's modification decision for an abuse of discretion. *In re Marriage of Rogers*, 213 Ill. 2d 129, 135 (2004). A court abuses its discretion when no reasonable person would agree with the decision (*In re Marriage of Turrell*, 335 Ill. App. 3d 297, 307 (2002)) or when it bases its decision on an incorrect view of the law. *Myrick v. Union Pacific R.R. Co.*, 2017 IL App (1st) 161023, ¶ 21. To determine whether the trial court applied the wrong legal standard in exercising its discretion, we first identify the correct legal standard, which is a question of law, subject to *de novo* review. *Id.* Here, as we will discuss, the trial court abused its

discretion, because it relied on an incorrect rule of law—that a substantial change must be proximate to the petition to modify—in determining that no substantial change occurred.

¶ 27    Robert's argument that the change in custody constituted a substantial change is as follows.  In 2013, five years after the 2008 judgment, Robert's share of overnight custody increased from 2 nights out of 14 to 6, or from 15% of the nights to 43%.  With the addition of other custody time, such as vacations, the split is close to 45/55.  Kris does not deny this.  Kris now has fewer support responsibilities for B.I., because he is in her care far less often.  To continue to give her the original support award would constitute a windfall.  Moreover, there is no authority for the trial court's explanation that "a reasonable time frame must be applied" to the change alleged in the petition and that the change in custody here was too remote to the petition to constitute a substantial change.  To the contrary, in *Sorokin*, 2017 IL App (2d) 160885, ¶¶ 25-26, this court rejected the argument that the alleged change must have occurred at a time proximate to the filing of the petition to modify.  For the reasons that follow, we agree with Robert.

¶ 28    To obtain a reduction in his or her child-support obligation, the obligor parent must prove that there has been a substantial change in circumstances since the entry of the most recent support order. *Id.* ¶ 28.  A significant change in custodial arrangements, by itself, is sufficient to establish a substantial change that would justify the modification of child support. *In re Marriage of White*, 204 Ill. App. 3d 579, 582 (1990) (a substantial change occurred when the custody arrangement changed from the mother having primary custody of both children to each parent having primary custody of one child).  While a child-support award may provide for more than the child's basic needs, so as to approximate the standard of living the child would have enjoyed had the parties stayed married, a child-support award is not meant to be a windfall to the

receiving parent. *In re Marriage of Lee*, 246 Ill. App. 3d 628, 644 (1993). Each parent has a duty to provide material support to the child. *In re Marriage of Singletary*, 293 Ill. App. 3d 25, 38 (1997).

¶ 29    In *Sorokin*, upon which Robert relies, the obligor parent petitioned to reduce support, based on a reduction in income that occurred years before the petition. The recipient parent argued that the reduction in income could not constitute a substantial change, because it occurred even earlier than the obligor alleged. This court rejected this argument:

> "Initially, we note what [the recipient parent] does *not* argue. She does not contend that the evidence failed to prove that [the obligor's] net income from [the date of the petition forward] was substantially less than what the trial court had found it was [on the date of the dissolution judgment]. \*\*\*
>
> Indeed, [she] is essentially arguing that respondent's evidence of changed circumstances was *too* good. She contends that the change not only occurred, but occurred much earlier than respondent alleged—and that, for this reason, he did not deserve relief. \*\*\* Thus, she asks us to reverse \*\*\* the reduction in respondent's obligation—not on the conventional ground that he had not become poorer, but on the novel ground that he had actually become poorer much sooner." (Emphasis in original.)
>
> *Sorokin*, 2017 IL App (2d) 160885, ¶¶ 25-26.

¶ 30    Thus, *Sorokin* refutes the proposition that the alleged change must have occurred at a time proximate to the filing of the petition to modify. The general rule remains that the change must have occurred since the entry of the most recent support order. See *id*. ¶ 25; *In re Marriage of Waller*, 339 Ill. App. 3d 743, 750 (2003).

¶ 31    Like the obligor parent in *Sorokin*, Robert petitioned to modify based on a change that occurred years before he filed the petition.  Like the recipient parent in *Sorokin*, Kris does not argue that Robert failed to prove the alleged change.  That change is that Robert greatly increased his share of parenting time.  Kris cannot deny that she accepted approximately $330,000 in child support during a period of near-equal parenting time and near-equal wealth (albeit also during a period when Robert earned substantially more employment income).  Also as in *Sorokin*, the past is done.  However, moving forward from the date of the petition, we can recognize that a substantial change has occurred since the most recent support order and remand for a determination of a new support amount consistent with the present circumstances.  Those circumstances are that Kris has B.I. in her home only four to five days more per month than Robert has B.I. in his home.  Thus, without a modification, Kris is receiving approximately $1500 per "extra" day with B.I.  As Kris no less than Robert has the duty and the ability to provide B.I. with the lifestyle he would have had if the parties had never separated, the current child-support amount certainly constitutes an impermissible windfall to her.

¶ 32    We reject Kris's argument that *In re Marriage of Salvatore*, 2019 IL App (2d) 180425, ¶ 33, compels a different result.  *Salvatore* did not involve a change in parenting time.  Rather, the father argued that, if the court did not find a substantial change in circumstances based solely on the mother's obtaining employment as contemplated in the original judgment, it should also consider that his child-support obligation under the new statutory guidelines would be less than half of his obligation based on the prior guidelines.  This court rejected the father's argument, explaining that a party cannot rely on the passage of Public Act 99-764 (eff. July 1, 2017) (amending child-support provisions) to establish a substantial change in circumstances.  *Salvatore*, 2019 IL App (2d) 180425, ¶ 33.  In amending the statute, the legislature stated that "

'[t]he enactment of this amendatory Act of the 99th General Assembly itself does not constitute a substantial change in circumstances warranting a modification.' " *Id.* (quoting Pub. Act 99-764 (eff. July 1, 2017)). We cautioned that, given the disparity that can result when plugging variables into the old versus the new guidelines, it is predictable that individuals with significant support obligations will point to any change to try to establish the substantial change needed to avail themselves of the new guidelines. *Id.*

¶ 33 The circumstances in this case do not implicate our cautionary language in *Salvatore*. Here, Robert points to an actual substantial change in circumstances, his significant increase in parenting time since the entry of the most recent support order. The original judgment was the most recent support order, because the court never modified the support amount in conjunction with the 2013 custody change. In fact, Robert withdrew that request, and the court's order expressly stated that, aside from custody, all of the original judgment's provisions remained in full force and effect.

¶ 34 Kris seems to imply that Robert must be relying on the amendment to establish a substantial change, because the old guidelines used a straightforward income-percentage chart to determine amounts, whereas the new guidelines include parenting time as a part of the statutory formula. We reject this argument, because the amended statutory formula concerns step two, determining the amount of the award *after* the threshold substantial change has been established. Here, we are concerned with step one, determining whether a substantial change has occurred in the first place. Parenting time has always been a factor in determining whether there has been a substantial change in circumstances. For example, *White*, which held that a change in the custody arrangement constituted a substantial change in circumstances, was decided in 1990, long before the 2017 amendment. (In *White*, the court acknowledged that there was no set

formula (at that time) to account for shared parenting, and it directed the trial court to exercise its discretion on remand in modifying the award in light of the change in parenting time. *White*, 204 Ill. App. 3d at 582.)

¶ 35    Because we have made the threshold determination of a substantial change, we need not consider Robert's additional allegations of change. *Sorokin*, 2017 IL App (2d) 160885, ¶ 28. That is, we need not consider Robert's argument that Kris's increased income and wealth, as well as his own decreased income following retirement, contributed to the substantial change. Nevertheless, these factors are relevant to the trial court's determination on remand of the new support amount.

¶ 36    On remand, the trial court is to determine the new support amount. Robert filed his petition to modify on August 20, 2017, after Public Act 99-764 became effective. Therefore, the new support amount is to be calculated under the new guidelines, which will take into account each parent's income and, because B.I. resides with Robert more than 146 nights per year, a shared-physical-care multiplier. See 750 ILCS 5/505(a)(1.5), (3.8) (West 2018).

¶ 37    In sum, Robert's increased parenting time alone is sufficient to establish a substantial change in circumstances justifying modification of the support award. Other issues raised by Robert, such as Kris's wealth and Robert's retirement, may be considered on remand when the trial court sets the new support amount.

¶ 38                                 III. CONCLUSION

¶ 39    For the reasons stated, we reverse the trial court's denial of Robert's petition to modify child support and remand for a determination of the new support amount.

¶ 40    Reversed and remanded.