2022 IL App (2d) 210728-U
No. 2-21-0728
Order filed November 29, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| SHANNON RODGERS | ) | of Du Page County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 15-D-307 |
| | ) | |
| DANIEL RODGERS, | ) | Honorable |
| | ) | Kenton Skarin, |
| Respondent-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court.
Presiding Justice Brennan concurred in the judgment.
Justice McLaren partially dissented.

**ORDER**

¶ 1    *Held*:  The trial court erred in finding that respondent's increase in total compensation was not a substantial change in circumstances and we remand the cause for findings based on the requisite factors enumerated in section 504(a) of the Illinois Marriage and Dissolution of Marriage Act.

¶ 2    Petitioner, Shannon Rodgers, appeals from the trial court's denial of her petition to modify maintenance. Shannon argues that respondent, Daniel Rodgers, had an increase in total compensation from $200,674 to approximately $467,000, constituting a substantial change in circumstances. For the reasons that follow, we reverse and remand for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4      The parties were married on May 18, 2002, and their marriage was dissolved on September 20, 2017. The parties had two children born during the marriage. A marital settlement agreement (MSA) dated September 19, 2017, was incorporated by reference into the dissolution judgment on the parties' agreement. Regarding maintenance, the MSA provided:

"8.1     Maintenance. Daniel shall pay to Shannon as and for modifiable and terminable maintenance, the sum of Four Thousand Four Hundred Thirty Four Dollars ($4,434.00) per month, commencing October 1, 2017 and continuing each month thereafter until the termination of Daniel's obligation to pay maintenance as defined below. The maintenance calculation is calculated in accordance with the statutory guidelines based on Daniel having gross annual income of $200,674.00 and Shannon having imputed gross annual income of $35,000.00. The parties agree that Shannon's increased income shall not constitute a substantial change in circumstances unless she is earning more than $60,000 gross annual income per year. Similarly, for so long as Shannon earns less than $35,000.00 gross per year, she shall continue to have income of $35,000.00 gross per year imputed to her. The maintenance shall be paid pursuant to a support order and a notice of withholding.

8.2     Termination of Maintenance. Daniel's obligation to pay maintenance to Shannon shall be modifiable in accordance with Illinois law. Also, the occurrence of the first of the following termination events shall forever terminate Daniel's obligation to pay and forever waive Shannon's right to receive current maintenance:

          a.      The death of the Husband;

          b.      The death of the Wife;

          c.      The remarriage of the Wife;

   d.  The cohabitation by the Wife on a resident, continuing conjugal basis as found by a Court of competent jurisdiction;

   e.  The date April 30, 2025 (this termination date is subject to modification pursuant to proper notice and petition filed prior to April 30, 2025); or

   f.  Any other statutory termination events provided for in 750 ILCS 5/510."

¶ 5  On October 16, 2020, Shannon filed a petition to modify maintenance based on a substantial change in circumstances. Shannon alleged that Daniel's income had increased substantially from the $200,674 figure that was used to calculate maintenance in the MSA.

¶ 6  On September 8, 2021, the hearing for Shannon's petition to modify maintenance was held. Daniel testified that he worked as a consultant for Rodgers & Houder, an executive search and employment recruiting firm. Daniel is the "Rodgers" of the company name. Prior to the divorce he had an ownership interest in the company. He sold his interest in the company in 2017 but remained an employee. As of the hearing, Daniel also worked in some capacity for RHM Staffing Solutions (here again the "R" is for Rodgers), and a company named Clean Lighting Solutions. Daniel has a base salary at Rodgers & Houder of $260,000 and receives an annual discretionary bonus. He is paid a percentage of the project fees for RHM Staffing Solutions and Clean Lighting Solutions.

¶ 7  In 2019, he received a base salary of $260,000 and a bonus of not more than $100,000 from his employment with Rodgers and Houder; an approximate total compensation of $360,000. On his tax return, he listed $226,996 under the category "[w]ages, salaries, tips, etc." He listed $138,356 under the category "[o]ther income" for a total of $365,352.

¶ 8  In 2020, he received a base salary of $260,000 and a bonus of approximately $150,000 from Rodgers & Houder. He received approximately $50,000 to $60,000 from RHM Staffing

Solutions and approximately $7,000 from Clean Lighting Solutions. In total, this amounted to approximately $467,000. On his tax return for 2020, he listed $289,109 under the category "[w]ages, salaries, tips, etc." and "[o]ther income" of $21,181, which amounted to $310,290.

¶ 9       When asked if the amounts he testified to were accurately reflected on his 2020 tax return, the court *sua sponte* interjected and admonished Daniel of his Fifth Amendment right against self-incrimination. Daniel took a brief recess and was asked again if the amount of approximately $467,000 was accurately reflected on his tax return. At that point Daniel invoked his Fifth Amendment right and the questioning moved on.

¶ 10      On the 2021 financial affidavit tendered to Shannon, Daniel listed gross income for 2020 of $226,996. For the 2021 year, as of February 28, 2021, he listed monthly gross earnings of $23,472. Extrapolated, that would result in annual gross income of $281,664. When asked if his earnings from RHM Staffing Solutions were included in that amount, he replied, "I think it was." Daniel testified that as of the date he completed the tendered affidavit in February 2021, he had yet to receive any bonus or commission money, resulting in no dollar amounts provided for those categories. Similarly, no money from Clean Lighting Solutions was provided because none had been earned at that time. According to the affidavit, after all expenses were subtracted, Daniel had a total income available per month of $5610.

¶ 11      Shannon Rodgers testified that she last worked outside the home in 2004. Around 2016 she enrolled full time in graduate school. She graduated with a master's degree in social work in 2020. Shannon had not obtained work in that field as of September 2021. Due to statewide closings during the pandemic, Shannon was unable to sit for the exam for licensure. Also, during that time there were periods when the schools of her two children were closed, and Shannon supervised their e-learning at home.

¶ 12    Shannon testified she was currently employed as a bartender and has one shift every Wednesday night and one shift every other weekend on Friday or Saturday night. She estimates she makes $60-100 a week. Shannon's paystub from the period July 28, 2021, to August 8, 2021, showed net wages of $138.06 and tips of $133 for total earnings of $268.06.

¶ 13    Shannon pays taxes on the maintenance she receives from Daniel. She owes approximately $13,000 for 2018 and $800 for 2020. The Illinois Department of Revenue put a lien on her house as a result.

¶ 14    The marital settlement agreement imputed to Shannon an income of $35,000. Since the dissolution, she has never earned a yearly salary of more than $35,000. Shannon has not earned more than $35,000 total since the entry of the judgment. Of the approximately $160,000-170,000 in non-marital property Shannon was awarded, she had $1000 remaining.

¶ 15    Shannon described living a comfortable life during the marriage. The family traveled to Italy, Disney World, Florida, Hawaii, Mexico, Canada, and Wisconsin. They typically took one warm weather vacation and a ski trip yearly. She has not been able to take such trips since the divorce. Shannon drove a new Mercedes-Benz during the marriage and now drives a 2014 Jeep. She and Mr. Rodgers patroned fine dining restaurants and belonged to a health club, neither of which she does now. The marital home was a five-bedroom and four-bathroom home with a movie theater, a guest suite, a kids' playroom, and an entertainment room. The family had landscapers and a cleaning service. She now resides in a three-bedroom townhome without cleaning or landscaping services. Shannon had no budget for shopping for clothes; received biweekly manicures and pedicures; had facials; regularly got massages; got Botox every four months; and had her hair done every six weeks. The family also entertained at the house, they hosted parties for Daniel's employees, family and friends, and their kids' birthdays with catered food, hired chefs,

bartenders, and decorations. Since the divorce Shannon has not continued the same grooming practices, nor has she entertained or hosted parties.

¶ 16    Shannon's affidavit listed monthly income, including maintenance and bartending, of $5700 and her living expenses totaled $9300.

¶ 17    The trial court developed a two-part framework for the substantial change in circumstances analysis. The trial court said first it must determine if a substantial change in circumstances has been shown, *and then* it would consider a modification of the maintenance award based on the factors listed in sections 504(a) and 510(a-5) of the Act.

> "Okay. So substantial change in circumstances, first I decide if that has happened, and if so, then I look at the factors in the statute 510, 504(a) and decide whether and how to set maintenance number at that point."

¶ 18    The trial court did not find Daniel's increase in compensation to be a substantial change in circumstances and did not find that Shannon experienced an increase in need. Stating as follows:

> "Based on the proof that the Court has received, the Court does note that Mr. Rodgers today earns more than he did at the time of the divorce. That much is undisputed from the testimony the Court has heard. However, under cases such as *Brunke* and *Plotz*, that is not sufficient to find that there has been a substantial change in circumstances. The Court, therefore, denies the petition to modify under 750 ILCS/5-510 because a substantial change in circumstances is a predicate requirement to showing that there should be a modification.
>
> * * *
>
> In any event, the fact is that the $35,000 a year as the testimony showed has not been earned by Ms. Rodgers during the time period, and insofar as there is a financial

worsening of her position, which the Court does not find, but insofar as there is, it is based upon that.

Because of either of these findings, the Court does not need to reach the 750 ILCS 5-510(a)(5) and 504(a) factors to reset maintenance. However, if the Court were to do so, it would similarly deny the petition to modify."

¶ 19    Shannon's petition to modify maintenance was denied. Shannon timely appealed.

¶ 20                                    II. ANALYSIS

¶ 21    On appeal, Shannon raises several contentions; however two are dispositive to our analysis. She contends that the trial court erred in finding that she failed to prove a substantial change in circumstances, and that "substantial change in circumstances" has a different meaning for modification of child support and modification of maintenance. We will limit our analysis to those particular contentions.

¶ 22    First, Shannon contends that the trial court erred in finding that she did not prove that a substantial change in circumstances occurred. Pursuant to statute, "maintenance may be modified or terminated only upon a showing of a substantial change in circumstances." (750 ILCS 5/510(a-5)). To determine whether there has been a substantial change, courts in Illinois have held that "substantial change in circumstances" as required under section 510(a) of the Act means that either the needs of the spouse receiving maintenance or the ability of the other spouse to pay that maintenance has changed. *In re Marriage of Anderson*, 409 Ill. App. 3d 191, 198 (2011). The burden of proof lies with the party seeking the modification of maintenance. *In re Marriage of Osseck*, 2021 IL App (2d) 200268.

¶ 23    The questions of whether the ability of the payor spouse or the needs of the receiving spouse have changed are both questions of fact. To determine whether the ability or the needs of

the respective party has changed, we look to the statutory language of the Act. Section 510(a-5) provides, that in all proceedings for a modification of maintenance, as well as in proceedings in which maintenance is being reviewed, the court *shall consider* the applicable factors set forth in subsection (a) of section 504 and the following factors:

> "(1) any change in the employment status of either party and whether the change has been made in good faith;
>
> (2) the efforts, if any, made by the party receiving maintenance to become self-supporting, and the reasonableness of the efforts where they are appropriate;
>
> (3) any impairment of the present and future earning capacity of either party;
>
> (4) the tax consequences of the maintenance payments upon the respective economic circumstances of the parties;
>
> (5) the duration of the maintenance payments previously paid (and remaining to be paid) relative to the length of the marriage;
>
> (6) the property, including retirement benefits, awarded to each party under the judgment of dissolution of marriage, judgment of legal separation, or judgment of declaration of invalidity of marriage and the present status of the property;
>
> (7) the increase or decrease in each party's income since the prior judgment or order from which a review, modification, or termination is being sought;
>
> (8) the property acquired and currently owned by each party after the entry of the judgment of dissolution of marriage, judgment of legal separation, or judgment of declaration of invalidity of marriage; and
>
> (9) any other factor that the court expressly finds to be just and equitable." (750 ILCS 5/510(a-5)).

¶ 24     The basis of Shannon's petition is the increase in Daniel's income, making factor (7), the most relevant of the nine enumerated factors to the present case. The factors of section 510(a-5) must be considered to determine whether a substantial change in circumstances has occurred. A trial court's finding that a substantial change in circumstances has occurred is reviewed under the manifest weight of the evidence standard. See *In re Marriage of Sorokin*, 2017 IL App (2d) 160885, ¶ 24. A finding is against the manifest weight of the evidence where the opposite conclusion is clearly apparent or the finding is unreasonable, arbitrary, or not based on the evidence. *In re Marriage of Vickers*, 2022 IL App (5th) 200164, ¶ 45.

¶ 25     The vital issue in this appeal is whether there is an increase or decrease in the parties' incomes. It is undisputed from the evidence presented that Daniel's income increased from the $200,674 figure used to establish maintenance. Daniel testified to 2020 income of $467,000. This increase in salary supports a change in Daniel's ability to pay. Further, the parties contemplated the effect a future increase in salary would have on the maintenance agreement in the MSA. Shannon and Daniel stipulated that an increase to Shannon's earnings, to more than $60,000, would constitute a substantial change in circumstances. The parties had clearly contemplated that an increase in income could constitute a substantial change.

¶ 26     The trial court's finding that Shannon failed to prove a substantial change, at which it arrived by creating and applying a two-part framework, is against the manifest weight of the evidence. The statute requires that factors set forth in sections 510(a-5) and 504(a) shall be used to determine whether a substantial change in circumstances has occurred, and not be used only when it comes to determining whether the maintenance award should be modified. Here, the trial court stated on the record that it would *not* apply the factors to determine whether a substantial change occurred. If the court had, it would have been obvious that Daniel's increase in income of

more than $250,000 created a change in his ability to pay, satisfying Shannon's burden. The trial court then should have determined how the maintenance award should be modified upon this showing.

¶ 27    The trial court relied on *In re Marriage of Brunke*, 2019 IL App (2d) 190201, for its determination that an increase in salary is not sufficient to show a substantial change in circumstance. However, *Brunke* is distinguishable from the case at bar. *Brunke* holds that the increase in husband's salary *alone* does not constitute a substantial change in circumstances. *Id.* ¶ 63 (citing *In re Marriage of S.D.*, 2012 IL App. (1st) 101876, ¶ 44) (the law does not require a party to pay more maintenance merely because he or she can do so). The parties in *Brunke* both had substantial assets at the time of the dissolution, the standard of living for both parties was comparable to what was enjoyed during the marriage, the wife lived in the unencumbered marital residence, and the husband's salary at the time of the dissolution was sufficient to support that standard of living at the time of the dissolution. *Id*. The wife was not entitled to an increase in maintenance when her needs had not changed, and she was living commensurate with the standard that she had enjoyed during the marriage.

¶ 28    In this case, Daniel's salary at the time of the dissolution afforded neither party a lifestyle equivalent to what they enjoyed during the marriage. Daniel's monthly expenses exceeded his monthly income at the time of the divorce, and Shannon testified to the reduction in the standard of living when it came to her home, personal grooming, parties, cars, and vacations.

¶ 29    After the divorce, Daniel was able to reconcile substantial debts and operate on a monthly surplus. Shannon meanwhile has nearly exhausted her savings and is incurring debt for monthly living expenses. In *Brunke* the parties maintained their standard of living from the time of the dissolution and grew their respective assets. *Id.* Here, Shannon has adjusted to a less comfortable

standard of living, she has exhausted savings of roughly $165,000 in the five years since the dissolution, and she has incurred debt from paying her monthly living expenses and taxes. Additionally, through matters out of Shannon's control related to the pandemic, she has not been able to advance her career as she expected when she obtained a master's degree.

¶ 30    Another case relied upon by Daniel, *In re Marriage of Plotz*, 229 Ill. App. 3d 389 (1992) is also distinguishable. The court in *Plotz* found that the moderate increase in both parties' income was not a substantial change in circumstances. *Id.* at 390. The trial court stated that it arrived at this conclusion through a review of the evidence and, crucially, in considering the "factors in 504" which led to the determination that the wife was making bona fide efforts to become employed as well as raising a child. *Id.* at 391. The court in *Plotz* clearly analyzed the 504(a) factors as required.

¶ 31    The trial court relies on Daniel's assertion supported by *Brunke* and *Plotz* that an increase in income cannot establish a substantial change. What *Brunke* and *Plotz* both stand for is that an increase is not, essentially, a *per se* substantial change alone. However, it certainly *can* be part of the basis for a substantial change. If the totality of circumstances, as analyzed under the section 504(a) and 510(a-5) factors of the Act, support that finding.

¶ 32    Despite the fact that the trial court found that Shannon failed to prove a substantial change in circumstances, and it need not reach the 504(a) and 510(a-5) factors, the trial court went on to say that if it *were* to reach them, it would determine that a modification of maintenance was not required pursuant to those factors. As the evidence presented showed that Daniel's increased income was a substantial change in circumstances under section 510(a-5)(7) of the Act, the trial court should have analyzed the statutory factors enumerated in section 504(a) of the Act to determine whether a modification of Daniel's maintenance obligations would be appropriate. Therefore, we reverse the finding of no substantial change in circumstances and remand the matter

to the trial court for the required consideration of the 504(a) factors. We recognize that it is not mandatory for the trial court to systematically consider each factor individually. *Blum v. Koster*, 235 Ill. 2d 21 (2009). "Reviewing courts have consistently held that, where the record is adequate to provide a basis upon which to review the propriety of the decision and the decision is supported by the evidence, the reviewing court will not reverse solely because specific findings are lacking." *Id.*, 235 Ill. 2d at 37-38 (quoting *In re Marriage of Connors*, 303 Ill. App. 3d at 230). However, in this case the trial court expressly stated it did not consider the 504(a) factors, and so the record is inadequate. In light of this, the trial court must make a record of its findings in resolving this motion to modify maintenance to Shannon.

¶ 33    Shannon's second contention is that the trial court erred in finding that there is a difference in a substantial change of circumstances for a modification of child support and a modification of maintenance. The Illinois Marriage and Dissolution of Marriage Act sets out the basis for modification of child support: "An order for child support may be modified as follows: (1) upon a showing of a substantial change in circumstances." (750 ILCS 5/510(a)(1)). And similarly states the basis for a modification of maintenance: "An order for maintenance may be modified or terminated only upon a showing of a substantial change in circumstances." (*Id.* § 510(a-5)).

¶ 34    Daniel argues that the standard is distinct when it comes to either child support or maintenance. This argument is unconvincing. In *Plotz*, the former wife petitioned for an increase in child support and maintenance in response to husband's petition to terminate maintenance (229 Ill. App. 3d 389, 390). The trial court found that a moderate increase in both parties' income was not a substantial change in circumstances. *Id.* The trial court did not modify the maintenance award, but it ordered an increase from $500 to $510 a month for child support to conform with the guidelines. *Id.* at 391. The appellate court upheld the finding that there was no substantial change

in circumstances and reversed the increase in child support because the modification could only be proper if a substantial change was shown. *Id.* at 392. This demonstrates that the standard is one and the same: no substantial change as to warrant a modification of maintenance means there has been no substantial change to warrant modification for child support.

¶ 35                               III. CONCLUSION

¶ 36     The record indicates that the trial court would deny the modification requested, even if it found a substantial change in circumstances. However, the record also shows that the trial court did not even consider the factors identified in sections 504(a) and 510(a-5). Nor does the record support this denial with the required scrutiny. Accordingly, we reverse the trial court's ruling denying the motion for an increase in maintenance, and we remand the matter to the trial court for the limited purpose to allow arguments of counsel concerning the factors favoring the interests of their respective clients. No new evidence will be presented. Then, according to the statutory authority under 504(a) the trial court will make a record of the factors that support its disposition of the motion for modification of maintenance. The trial court is further instructed to complete these directions within 60 days.

¶ 37     Reversed and remanded.

¶ 38     Justice McLaren, partially dissenting:

¶ 39     I partially dissent because I submit if one reads the majority disposition above, one would reasonably conclude that the manifest weight of the evidence does not support the trial court's unspecified findings regarding its determination of *no change* based upon the other 504 and 510 factors. The majority relates above in paragraph 32, "Despite the fact that the trial court found that Shannon failed to prove a substantial change in circumstances, and it need not reach the 504(a)

and 510(a-5) factors, the trial court went on to say that if it *were* to reach them, it would determine that a modification of maintenance was not required pursuant to those factors."

¶ 40    Based upon what the majority disposition discloses, I submit that Shannon has established that an increase is in order and that the case should be remanded, not for further findings (which appear to be preordained and erroneous), but a determination of the amount of the increase. See Ill. S. Ct. R. 366 (eff. Feb. 1, 1994).